## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **MARK JACOBY,** individually, | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO:** |
| **v.** | ) | **JUDGE** |
| | ) | |
| **SARA MURRAY,** individually, | ) | **COMPLAINT** |
| | ) | |
| and | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **CABLE NEWS NETWORK, INC.,** | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

MARK JACOBY, by counsel, states his Complaint for defamation against Defendants SARA MURRAY and CABLE NEWS NETWORK, INC. ("CNN") as follows:

### STATEMENT OF THE CASE

1.     Defendant Sara Murray ("Murray"), a CNN political correspondent, wrote an article published to CNN's website on September 4, 2020.

2.     The article included the false and defamatory claim that Plaintiff Mark Jacoby ("Jacoby") "has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party."

3.     Jacoby was never charged and never pleaded guilty to any crime related to his work for the California Republican Party.

4.     Murray knew these facts, and her claim to the contrary was intended to convince her readers that Jacoby had not only previously engaged in fraud in the petition business, but was likely doing the same thing "again" for the presidential campaign of Kanye West.

5.      To sustain her false line of attack on West, Murray needed readers to accept the defamatory statement that Jacoby had pleaded guilty to fraud in conducting similar work in the past.

6.      Murray, her editors, and her counsel all knew that she was wrong.

7.      On information and belief, CNN published the defamatory statement anyway based on a gamble that Jacoby would not act to enforce his rights, or that the cost of litigation was worth it to serve their broader goal of discrediting West's campaign.

8.      Jacoby sues not only to recover for the injury to his business and reputation, but also to deter CNN from similarly mistreating others in order to advance its political goals.

9.      Plaintiff attaches a true and accurate copy of the September 4th article entitled "*Kanye West isn't going to be president, but his unconventional bid forges on.*" *See* **Exhibit 1**.

10.      The day before publishing the September 4th article, Murray reached out to Jacoby by text message about the article. During that exchange, Jacoby provided a statement that made clear that his prior misdemeanor plea **"had nothing to do with any political campaign or voter, Let the Voters Decide, voter registrations, elections or any other matter…."** Mr. Jacoby made clear that, as for the September 4th article on which Ms. Murray was working, "any ongoing focus on [the misdemeanor] is misplaced and irresponsible." **Exhibit 2**, screenshots of these text messages.

11.      After Mr. Jacoby provided this statement, Ms. Murray did not follow up with any questions about the misdemeanor charge, Let the Voters Decide, Mark Jacoby, or Jacoby's work on behalf of the California Republican Party.

12.     On September 4th, Murray and CNN published the article that included the false and defamatory claim that Jacoby "has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party." *See* **Exhibit 1**.

13.     Soon after, legal counsel for Jacoby sent a letter to Murray explaining that Jacoby has not previously pleaded guilty to voter registration fraud related to his work for the California Republican Party, that any statement to the contrary was false, and requesting that Murray correct her article in a way that would enable readers to easily find the correction. *See* **Exhibit 3**.

14.     After repeated correspondence between Jacoby's legal counsel and CNN's legal counsel, CNN published a second, related article entitled "*Kanye West's campaign has hired GOP operative with history of controversial work*." **Exhibit 4**, copy of September 22nd article.

15.     The article discussed several allegations of fraudulent conduct related to Kanye West's campaign for president involving political consultants and companies other than with which Mr. Jacoby had no involvement:

> Kanye West's presidential campaign has shelled out nearly $1.5 million to a secretive consulting firm in Arizona -- a brand new one, explicitly devoted to independent campaigns but run by a man with a long history of controversial work for Republicans.
> …
> Nathan Sproul, Lincoln Strategy Group's founder and a longtime Republican operative, has a history of working for the Republican National Committee and the Trump campaign. Some of his companies have also faced fraud allegations over the course of 15 years, leading to investigations in a handful of states, a Federal Election Commission investigation, charges against a handful of former employees and a messy breakup with the RNC.
> …
> This election cycle, allegations have emerged across the country of the West campaign submitting fake signatures, duping voters into signing petitions supporting West or, in an instance in Wyoming, telling voters that a signature for West would take votes away from Biden.
> …
> In 2004, Sproul's firms -- prior to Fortified and Lincoln Strategy -- faced allegations that, while running voter registration drives, they destroyed Democrats' registrations and forged registration cards.

…
In Oregon, Sproul and Associates was the subject of a voter registration fraud investigation by state and federal authorities.
…
Eight years later, Sproul came under scrutiny again, this time in Florida.

16.     The article also discussed allegations of fraud and impropriety against the West campaign:

> In Virginia, a judge booted West off the ballot after deciding that a number of oaths the campaign had collected from people promising to represent West in the Electoral College, "were obtained by improper, fraudulent and/or misleading means."
> …
> In Wyoming, signature-gatherers asked voters to sign petitions to "take votes" away from Biden, saying the petition would help Trump, according to reporters from the Casper Star-Tribune.

17.     In a section of the article under the heading "Teamwork," the article then discussed Mr. Jacoby and his past political work, with particular emphasis on his earlier "misdemeanor voter registration fraud charge" in California.

18.     Rather than issuing a retraction over the false and defamatory claim in the September 4th article, Murray and CNN doubled down in this September 22nd article, including only a single sentence that stated: "Representatives for Jacoby have repeatedly insisted his misdemeanor plea is not relevant to his political work." That was also false.

19.     Defendants compounded the injury from the initial false reporting by misrepresenting Jacoby's response to that reporting.

20.     As CNN and Murray would have their readers believe, Jacoby implicitly accepted the underlying facts falsely reported by CNN, and merely "insisted" that those facts are "not relevant to his political work." The contrary is true.

21.     Representatives for Jacoby have actually pointed out to CNN that Jacoby's misdemeanor plea related only to his using the wrong California address for his own personal

voter registration in 2006 and 2007, and was not at all for conduct relating to the California Republican Party drive in 2008. This is a matter of easily verifiable fact.

22.    Murray recasts the factual dispute as merely one of opinion—whether the plea is "relevant" to his political work. But Murray's and CNN's readers were never given the facts to form such an opinion because Murray and CNN knowingly and purposely misreported Jacoby's charge and plea.

23.    In short, Defendants' statements are false and defamatory. Defendants' statements are also defamatory by implying that Mr. Jacoby and his company have engaged in fraudulent, unethical, and unlawful practices in connection with voter campaigns.

**ALLEGATIONS COMMON TO ALL COUNTS**

24.    On September 4, 2020, Defendant Murray wrote and published an article to Defendant CNN's website claiming that Plaintiff Jacoby "has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party." This claim is defamatory because (1) it is literally false on its face, and (2) it creates a defamatory implication. And because Defendants' comment injures Jacoby in his trade and profession, it is defamatory *per se*.

25.    Rather than clarifying their statements as Plaintiff Jacoby requested, Defendants doubled down on their false accusations of voter registration fraud in a second article published on September 22, 2020.

26.    Defendants' conduct has caused and continues to cause substantial harm to Jacoby and his business.

27.     In this lawsuit, Jacoby claims: (1) Defamation and (2) Defamation by Implication. Further, to deter Defendants from publishing additional defamatory and prejudicial statements, Jacoby seeks an award of punitive damages.

28.     This suit is being filed to protect Plaintiff Mark Jacoby's reputation and business interests, and to compensate him for damages. This lawsuit is not filed to harass any person or entity for exercising its constitutional right of free speech in connection with a public issue.

**A.     In 2008, Jacoby pleaded guilty to a misdemeanor related to the location listed on his personal voter registration, which was in no way connected to any voter registration or petition gathering campaign.**

29.     Mark Jacoby owned and operated a business called Young Political Majors ("YPM").

30.     YPM provided petition signature-collection services and voter registration services to a wide variety of clients with differing political views and affiliations.

31.     When Jacoby registered to vote in 2006 and 2007, California law required petition signature-gatherers to sign a declaration stating that they were either registered to vote in California or that they were eligible to do so.

32.     California's petition signature-gatherer requirement applied only to those who circulated petitions—not those who simply ran petition companies or those who worked on voter registration drives as opposed to initiative petition signature gathering.

33.     The Supreme Court has since found laws like California's petition signature-gatherer requirement to be unconstitutional under the First Amendment.

34.     In 2006 and 2007, Mark Jacoby registered to vote at the address of his childhood home in Los Angeles, California.

35.     Jacoby no longer lived at that address when he registered to vote in 2006 and 2007.

36.    At the time of his 2006 and 2007 registrations, Jacoby lived a few blocks away from his childhood home.

37.    Under California law at the time, it was a felony for a person to register himself when he had no right to vote, and it was perjury to provide false information on a voter registration card. California rarely enforced these penalties.

38.    On October 3, 2008, the Public Integrity Unit of the Los Angeles County District Attorney's office charged Jacoby with four felonies for registering to vote at an address where he did not live.

39.    Jacoby ultimately pleaded guilty to a misdemeanor related to his registration at his childhood home, rather than his actual home.

40.    Jacoby registered at his childhood address in 2006 and 2007 for personal reason— mainly safety concerns related to harassment he was receiving from a former YPM contractor. Jacoby lived with his mother at his new address, and was concerned that disclosure of that new address would allow the YPM contractor to locate him and might endanger his mother.

41.    Jacoby did not register at his parents' address in 2006 and 2007 to satisfy California's petition signature-gatherer eligibility statute. His true address at that time would also have been sufficient.

42.    Jacoby had no reason to register at his parents' address in 2006 and 2007 to satisfy California's signature-gatherer eligibility statute because he lived at another address in California and was therefore still eligible to vote in California.

43.    Jacoby did not perform work on behalf of the California Republican Party until 2008, at which time he was engaged to register voters rather than to gather petition signatures.

44.     When he registered to vote in 2006 and 2007, neither Jacoby nor his business, YPM, was in any way engaged to perform services on behalf of the California Republican Party in any capacity.

45.     Neither Jacoby nor YPM ever performed initiative petition signature-gathering services for the California Republican Party.

46.     Since California's residency requirement applied only to initiative petition circulation, and not voter registration, Jacoby had no reason to register at his parents' address in 2006 and 2007 to register voters for the California Republican Party in 2008.

47.     The California Secretary of State's Office published a news release stating:

For his business, Jacoby traveled California and a number of other states collecting petition signatures and registering voters. Under state law, signature-gatherers must sign a declaration stating that they are either registered to vote in California or that they are eligible to do so. Jacoby allegedly registered to vote at his childhood address to meet this legal requirement.

48.     The *LA Times* reported that:

State and local investigators allege that Mark Jacoby fraudulently registered himself to vote at a childhood California address where he no longer lives so he would appear to meet the legal requirement that all signature gatherers be eligible to vote in California. His firm, Young Political Majors, or YPM, collects petition signatures and registers voters in California and other states.

49.     The *LA Times* reported that:

Laguna Beach resident Mark Jacoby, who collects signatures for petition drives, pleaded guilty to a misdemeanor and was sentenced to three years' probation and 30 days of service with the California Department of Transportation. Jacoby, owner of Young Political Majors, registered to vote at Los Angeles addresses that were not his own. State law requires petition circulators to be qualified voters.

50.     In articles dated October 18 and October 20, 2008, the *LA Times* reported that YPM was performing voter registration services for the California Republican Party in 2008.

51.     The articles referenced in Paragraph 39 correctly reported that YPM performed voter registration services for the California Republican Party in 2008.

52.     The statements above falsely reported that Jacoby registered at his parents' address to meet California's petition signature-gathering law.

53.     No reliable source—and indeed, no source at all—has ever reported or claimed that Jacoby's guilty plea related to voter registration services his businesses performed for the California Republican Party or any other client.

**B.     Defendants publish the September 4, 2020 article defaming Mr. Jacoby.**

54.     On July 4, 2020, rapper Kanye West announced that he was running for president.

55.     Kanye West's presidential campaign then tried to collect the number of signatures required to gain access to many states' November general election ballots.

56.     The campaign hired Jacoby and his business, Let the Voters Decide, to collect signatures for Kanye West's presidential run in several states.

57.     On September 3, 2020, Defendant Sara Murray contacted Jacoby by text message in connection to an article she was writing about the Kanye West presidential campaign.

58.     Responding by text, Jacoby agreed to an off the record interview as a confidential source.

59.     Murray then asked Jacoby several questions about Kanye West's presidential campaign. *See* **Exhibit 2**.

60.     Jacoby answered some of Murray's questions and attached three "statements" about Let the Voters Decide from which Murray could choose for inclusion in her article:

> Statement 1 – Let the Voters Decide is the largest network of professional petition circulators in the country. We are nonpartisan and work for Democratic, Republican. & Independent candidates, as well as working on a wide variety of ballot initiatives ranging across the political spectrum from liberal to conservative. Annually, we collect 5,000,000 or more signatures from registered voters from states coast to coast, more signatures than any entity other than Change.org!

Statement 2 – We do not comment on any current clients, but like all Americans, anyone who is qualified to stand for election has the right to run. To qualify to be on the ballot is unfortunately a very complicated and outdated system that varies by each individual state. We hope the media attention also recognizes the need to modernize such ballot access laws to make it easier for every American who wants to serve.

Statement 3 – Political adversaries often attempt to slander Mr. Jacoby personally due to the fact that he was the subject of a politically-motivated public arrest in California 12 years ago on charges that were ultimately reduced to a misdemeanor. The facts of the actual charge were that Mr. Jacoby, then a 25-year old, had registered at a childhood address. This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let the Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible.

61.    Murray confirmed receipt of the statements: "Thanks – who should I attribute the statements to. You?"

62.    Murray did not ask a single question about Let the Voters Decide, Mark Jacoby, or Jacoby's California misdemeanor before or after receiving Statement 3.

63.    On September 4, 2020, Defendant CNN published Murray's article to its website.

64.    The article was and is accessible to readers in Florida.

65.    The article was accessed by readers in Florida.

66.    At all relevant times, Mr. Jacoby was a resident of Florida.

67.    The article, entitled "*Kanye West isn't going to be president, but his unconventional bid forges on*," identifies Jacoby as one of several "Republican operatives" the West campaign "has cobbled together" to "help the campaign get on the ballot."

68.    The portion of the article directly discussing Jacoby is as follows:

Mark Jacoby, an executive at a company called Let The Voters Decide, is also helping the West campaign collect signatures in multiple states. Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party.

A representative for the company said, "This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let The Voters Decide, voter

registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible."

Still, the West campaign has been dogged by allegations of improperly or fraudulently obtaining signatures, which led to West being kicked off the Virginia ballot this week.

69.     Murray and CNN's intent to create the implication that Jacoby had committed fraud with his past work, and was likely doing it again, is clear from the paragraph they published right after Jacoby's denial: "Still, the West campaign has been dogged by allegations of improperly or fraudulently obtaining signatures, which led to West being kicked off the Virginia ballot this week." As CNN and Murray revealed in a later story, they knew Jacoby was not working on the Virginia effort that led to charges of fraud. There was no "Still" about it, and no linkage at all between Jacoby's 2008 plea and his current work.

**C.     Following publication of the false and defamatory September 4 article, Jacoby's legal counsel reached out to counsel for Defendants in an attempt to mitigate the article's harm.**

70.     Legal counsel for Jacoby sent a letter to Murray explaining that Jacoby had never pleaded guilty to voter registration fraud related to his work for the California Republican Party. *See* **Exhibit 3**.

71.     The letter requested that Murray correct her article to enable readers to easily find the correction.

72.     The letter also informed Murray that if the article was not corrected, Jacoby would move quickly to obtain redress.

73.     CNN's legal counsel responded on behalf of both Defendants, standing by Defendant Murray's so-called reporting, citing the LA Times articles and California Secretary of State news release quoted above. **Exhibit 5**, CNN's response letter.

11

74.    CNN's response letter failed to cite a single reliable source claiming that Jacoby's guilty plea related to voter registration services his businesses performed for the California Republican Party or any other client.

**D. Defendants double down on accusing Jacob of voter registration fraud in their September 22 article.**

75.    Despite the clear communications from Mr. Jacoby's legal counsel, CNN published a second article from Murray entitled "*Kanye West's campaign has hired GOP operative with history of controversial work.*" *See* **Exhibit 4**.

76.    The section of the article relevant to Mr. Jacoby stated:

A California firm called Let the Voters Decide also worked on ballot access issues for the West campaign in multiple states. The firm's founder, Mark Jacoby, has also faced past allegations of fraud.

Back in 2008, Jacoby was arrested and charged with four felonies related to voter registration fraud. He ended up pleading guilty to a lesser misdemeanor voter registration fraud charge.

Jacoby caught the attention of authorities that election cycle because of the signature gathering work his then-company, Young Political Majors, was doing. The company's work registering voters on behalf of the California Republican Party sparked a series of complaints. Voters said workers for Jacoby's firm had tricked them into registering as Republicans by telling them they were actually signing petitions for harsher penalties for child molesters, according to press reports at the time.

Representatives for Jacoby have repeatedly insisted his misdemeanor plea is not relevant to his political work.

"Kanye West hired Let the Voters Decide because it is an industry-leading, professional signature gathering company, with a reputation for being able to deliver on short timelines," Mark Jacoby said in a statement to CNN. "Mark Jacoby has more than two decades of experience qualifying ballot initiatives, referenda and candidates throughout the country. He has overseen the collection of tens of millions of signatures for political candidates and issues on both sides of the aisle over the years."

Jacoby's firm did not perform work for the West campaign in New Jersey or Wyoming, nor did it work on the electors effort in Virginia, according to a

representative for Jacoby. None of the allegations of fraud surrounding the West campaign have been directly tied to Jacoby or his firm.

77.     The article did not issue a retraction or otherwise fix the false and defamatory statement from the September 4 article. Further, it once again juxtaposed a false reference to Jacoby's plea to other allegations that were made against Jacoby 12 years ago and never substantiated. Once again, Murray and CNN tried to create the false implication that Jacoby was charged and pleaded guilty to the fraud referenced in the next paragraph. And once again, Murray and CNN knew this was false.

**E. As a result of Defendants' false and defamatory statements, Jacoby has experienced reputational, economic, and emotional harm.**

78.     As a direct and proximate result of Defendants' September 4th and September 22nd articles, Plaintiff Jacoby has experienced and continues to experience reputational, economic, and emotional harm.

79.     As a direct and proximate result of Defendants' articles, Plaintiff Jacoby lost a $1,000,000 signature gathering contract for a California referendum.

## Parties

80.     Plaintiff Mark Jacoby is a resident of Orange County, Florida and citizen of the state of Florida.

81.     Defendant Sara Murray is a resident and citizen of Washington, DC. She is a political correspondent for CNN based in Washington, DC.

82.     In the scope and course of her employment with CNN, Murray researched, wrote, and published both the September 4th and September 22nd articles discussed here.

83.     Defendant Cable News Network, Inc. ("CNN") is a foreign corporation existing under the laws of the State of Delaware with its principal place of business located at One CNN

Center, Atlanta, Georgia 30303. CNN's is a corporate citizen of Delaware and Georgia. CNN may be served by delivery of a copy of the summons and complaint to its duly-appointed registered agent, the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

### Jurisdiction and Venue

84.    This Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1332(a).

85.    This is an action for compensatory and punitive damages where the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of costs, interest, and attorney's fees. This includes, but is not limited to, damages arising from Plaintiff's loss of a $1,000,000 contract as a result of Defendants' defamatory statement.

86.    Complete diversity exists between Plaintiff, a citizen of Florida, and Defendants Murray—a citizen of Washington, DC—and CNN—a citizen of Delaware and Georgia.

87.    CNN is a fixture of cable and internet news, both nationally and internationally. CNN transacts business in the state of Florida, including through the distribution of its content through cable television and the Internet.

88.    Defendants committed the tortious acts identified here in the state of Florida.

89.    Defendants published these articles in the state of Florida.

90.    Defendants has intentionally sought and obtained benefits from their tortious acts in the state of Florida.

91.    Defendants directed their conduct at Mark Jacoby, a citizen of Florida.

92.    Mark Jacoby, a citizen and resident of Florida, suffered substantial reputational, economic, and emotional harm in this District.

93.     There is a reasonable nexus between Defendants' tortious conduct in Florida and the harm suffered by Mr. Jacoby in Florida and beyond.

94.     Defendants have sufficient contacts with the state of Florida to avail themselves of this Court's jurisdiction

95.     Defendants are subject to the jurisdiction of this Court.

96.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to this claim occurred in this District, including publication and injury.

97.     As outlined in above, Plaintiff, through counsel, complied with the notice provisions of Florida Law, including Fla. Stat. § 770.01, by giving notice to Defendants on September 8, 2020 that Defendants' statement was false and defamatory and asking Defendants to correct the statement. *See* **Exhibit 3**.

98.     Defendants actually received the notice, responded, and then published a second defamatory article proving Defendants had sufficient time and opportunity to retract the false and defamatory statement before Plaintiff sued. *See* **Exhibits 3-4**.

## COUNT I
## DEFAMATION

99.     Plaintiff Jacoby reasserts and incorporates by reference the allegations in all paragraphs of this Complaint as though fully restated here.

100.    Defendants published to third parties without privilege false and defamatory statements about Plaintiff, including that "Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party."

101.    These false and defamatory statements were communicated to third parties when Murray's article was published on CNN's website.

102.    The statement that "Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party" is false because the actions that prompted Jacoby's guilty plea were in no way related to the work YPM was doing or was planning to do for any client, including the California Republican Party.

103.    Defendants did not rely on reliable sources in making the statement, because no reliable source had ever reported that Jacoby's misdemeanor related to voter registration services YPM performed for the California Republican Party or any other client.

104.    Defendants' statement, taken individually and in its totality, is defamatory.

105.    Defendants either knew that the statement was false or recklessly disregarded the truth or falsity of the statement when they made it.

106.    Before the publication of the September 4th article, Jacoby informed Murray by text message that the misdemeanor charge had nothing to do with any political campaign or voter, Let the Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible.

107.    An adequate investigation would have quickly discovered that California's petition signature-gatherer requirement applied only to those who actually circulated petitions— not those who simply ran petition companies, or those who worked on voter registration as opposed to initiative petitions.

108.    The Defendants' false statement is defamatory because it prejudices Jacoby in the eyes of his associates and the community at large.

109.    The Defendants' false statement is defamatory *per se* because it tends to injure Jacoby in his trade or profession of gathering signatures and registering voters.

110.    Jacoby and his business have suffered substantial actual damages as a direct consequence of the Defendants' false and defamatory statement.

111.    As a direct and proximate result of Defendants' actions, Jacoby lost a $1,000,000 signature gathering contract.

112.    As a direct and proximate result of Defendants' actions Jacoby suffered permanent harm to his reputation

113.    As a direct and proximate result of Defendants' actions Jacoby suffered and continues to suffer severe emotional and mental distress.

114.    Defendants published the defamatory statements with actual malice and common law malice, entitling Jacoby to an award of punitive damages.

115.    Defendants' conduct was outrageous and willful, proving a want of care that raises a conscious indifference to the consequences of their actions.

116.    Jacoby is entitled to an award of punitive damages to punish Defendants and to deter them from repeating such misconduct in the future.

WHEREAS, Plaintiff Mark Jacoby respectfully requests the Court enter judgment against Defendants and in favor of Jacoby and award Jacoby damages compensating him for the injuries suffered by his reputation and business. Furthermore, to deter Defendants from publishing additional defamatory and prejudicial statements, Jacoby seeks an award of punitive damages.

## COUNT II
## DEFAMATION BY IMPLICATION

117.    Plaintiff Jacoby reasserts and incorporates by reference the allegations in all paragraphs of this Complaint as though fully restated here.

118.    On top of being literally false and defamatory, Defendants' statement that "Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California

Republican Party" also creates the false and defamatory implication that Jacoby's misdemeanor related to the methods he and his business used to register voters.

119.    Defendants' articles create the defamatory implication that Jacoby's misdemeanor related to the methods he and his business used to register voters because it juxtaposes a series of facts to imply a defamatory connection between them by presenting Jacoby's misdemeanor right before discussing "allegations [dogging the West campaign] of improperly or fraudulently obtaining signatures[.]"

120.    Defendants' articles create the defamatory implication that Jacoby's misdemeanor related to the methods he and his business used to register voters because they omit crucial facts that would avoid the implication, such as the fact that Jacoby's misdemeanor related to his own voter registration and not to any voter registration services performed on behalf of any client.

121.    The implication that Jacoby's misdemeanor related to the methods he and his business used to register voters was and continues to be apparent to the ordinary reader.

122.    The above implications in the context of the articles tend to lead the reader to believe that Jacoby is engaged in unethical, unlawful, or fraudulent tactics related to gathering signatures for the West campaign.

123.    The implication was communicated to third parties when Defendant Murray's articles were published on Defendant CNN's website.

124.    The implication is false, because Jacoby's guilty plea related only to his own personal voter registration in 2006 and 2007 was wholly unrelated to the methods he and his business used to register other voters in 2008.

125.    The implication is likewise false because there are no facts establishing that Jacoby is engaged in any unethical, unlawful, or fraudulent tactics related to gathering signatures for the West campaign.

126.    Defendants did not rely on reliable sources in making the implication, because no reliable source had ever reported that Jacoby's misdemeanor related to the methods he and his business used to register voters for the California Republican Party or any other client.

127.    Defendants' statements, taken individually and in their totality, are defamatory.

128.    Defendants either knew that the implication was false or recklessly disregarded the truth or falsity of the implication when it was made.

129.    The Defendants' false implication is defamatory because it prejudices Jacoby in the eyes of his associates and the community at large.

130.    The Defendants' false implication is defamatory *per se* because it tends to injure Jacoby in his trade or profession of gathering signatures and registering voters.

131.    As a direct and proximate result of Defendants' actions, Jacoby lost a $1,000,000 signature gathering contract.

132.    As a direct and proximate result of Defendants' actions Jacoby suffered permanent harm to his reputation.

133.    As a direct and proximate result of Defendants' actions Jacoby suffered and continues to suffer severe emotional and mental distress.

134.    Defendants published the defamatory statements with actual malice and common law malice, entitling Jacoby to an award of punitive damages.

135.    Defendants conduct was outrageous and willful, revealing a want of care that raises a conscious indifference to the consequences of their actions.

136.    Jacoby is entitled to an award of punitive damages to punish Defendants and to deter them from repeating such misconduct in the future.

WHEREAS, Plaintiff Mark Jacoby respectfully requests the Court enter judgment against Defendants and in favor of Jacoby and award Jacoby damages compensating him for the injuries suffered by his reputation and business. Furthermore, to deter Defendants from publishing additional defamatory and prejudicial statements, Jacoby seeks an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark Jacoby respectfully prays:

a.    That judgment be entered against Defendants for compensatory damages for more than one million dollars ($1,000,000) to be proven with reasonable certainty at trial;

b.    That judgment be entered against Defendants for punitive damages in an amount sufficient to deter further wrongful and improper conduct;

c.    That Plaintiff recover his reasonable attorneys' fees and costs; and,

d.    That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

Respectfully submitted this 9th day of October, 2020.

Respectfully submitted,

*/s/ Ian A. Northon*
Ian A. Northon
Florida Bar No. 101544
Michigan Bar P65082
Pennsylvania Bar 207733
RHOADES MCKEE, PC
Mailing Address: 55 Campau Ave NW, Ste 300
Grand Rapids, MI 49503
Local Address: 9128 Strada Place, Ste 10115
Naples, FL 34108

Tel.: (616) 233-5125
Fax: (616) 233-5269
ian@rhoadesmckee.com
smd@rhoadesmckee.com

and

Edward D. Greim
(Motion for Admission Pro Hac Vice Forthcoming)
Graves Garrett, LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

Attorneys for Plaintiff