IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARK JACOBY,

   Plaintiff,

vs.

CABLE NEWS NETWORK, INC. and
SARA MURRAY,

   Defendants.
_____/

Case No.:  6:20-cv-01871-PGB-GJK

**DEFENDANTS CABLE NEWS NETWORK, INC. AND SARA MURRAY'S
DISPOSITIVE MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, Defendants Cable News Network, Inc. ("CNN, Inc.") and Sara Murray ("Murray") (collectively, "Defendants") move this Court to dismiss Plaintiff Mark Jacoby's ("Plaintiff") Complaint (Doc. 1) in this action for failure to state a claim. In support of this motion, Defendants state:

### Introduction

In this action, Plaintiff seeks to hold Defendants liable for defamation claims related to an article concerning Kanye West's presidential campaign. But Plaintiff's Complaint is meritless and warrants dismissal. Plaintiff fails to adequately plead the requisite intent required of a public figure, and even if he had, the challenged statement is substantially true. Moreover, Plaintiff's defamation by implication claim fails because it is simply a reiteration of his defamation claim and is premised upon allegedly <u>false</u> statements, contrary to Florida law. In short, Plaintiff's

Complaint fails to state a claim upon which relief can be granted and must be dismissed in its entirety.

### Background

On July 4, 2020, Kanye West—billionaire rapper and ardent supporter of President Trump—announced his bid for presidency. In the months leading up to the election, many speculated West's belated bid was a calculated effort to siphon votes from Democractic-nominee Joe Biden. Indeed, despite West's eleventh-hour announcement, he was able to garner support from a variety of well-known Republican strategists who worked to advance his campaign.

Plaintiff, a professional signature collector, was among those strategists assisting West's efforts to collect signatures in select states. Plaintiff owns several signature-gathering firms known for supporting various pro-Republican causes in Florida, California, Arizona and Massachusetts, unrelated to West. He is also no stranger to the spotlight. Indeed, he has regularly been the subject of news coverage concerning instances of voter fraud and deception. *See* Declaration of Giselle M. Girones ("Girones Decl."), at Comp. Ex. A.[1]

In 2008, Plaintiff was arrested on voter fraud charges in California. At the time, Plaintiff's company, Young Political Majors, LLC ("YPM"), had been hired by the California Republican Party to register voters. According to the California Secretary of State's Office, Plaintiff was arrested and charged with four felonies for using a California address to meet the

---

[1] Copies of these articles are attached to the Girones Declaration, filed simultaneously herewith, as Composite Exhibit A. These articles are a sampling of the press coverage Plaintiff received concerning voter deception and voter fraud charges. This Court may take judicial notice of these articles that establish Plaintiff is a public figure. *See Turner v. Wells*, 879 F.3d 1254, 1272 n. 5 (11th Cir. 2018) (noting that the court may take "judicial notice of the existence of . . . articles written about [plaintiff]" but not for the truth of the matters asserted).

state's requirement for signature-gatherers.[2] Plaintiff ultimately pleaded guilty to a misdemeanor charge. After entry of the plea, the Los Angeles District Attorney's Office issued a press release reiterating Plaintiff's actions were done in an effort to appear to meet the legal requirement for signature-gatherers. As a result, multiple outlets, including the *Los Angeles Times*, reported the fraud was linked to Plaintiff's work with the California Republican Party.[3]

On September 4, 2020, Defendants published an article entitled "Kanye West isn't going to be president, but his unconventional bid forges on." (Doc. 1, Ex. 1) ("the September 4 Article").[4] The September 4 Article focused on the campaign's failed efforts to appear on the ballot in Virginia and Arizona. *Id.* It also discussed a number of GOP political strategists assisting West's campaign, including Plaintiff. *Id.* Like the various other reports, the September 4 Article noted Plaintiff had previously pleaded guilty to voter registration fraud related to his work for the California Republican Party. *Id.* It also included a statement from Plaintiff, who

---

[2] A copy of the press release issued by the Secretary of State's Office is attached to the Girones Declaration as Exhibit B. On a motion to dismiss, a court may consider documents that a complaint incorporates by reference. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (court may consider document not attached to complaint when "a plaintiff refers to [that] document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (same). Here, a portion of the text from the press release is set forth and specifically referenced in Plaintiff's Complaint and is central to Plaintiff's defamation claim that Defendants knowingly published unprivileged, false and defamatory statements concerning him. (Doc. 1 ¶¶ 47, 73, 74, 103, 126, Ex. 5) (quoting press release and alleging Defendants did not rely on reliable sources).

[3] Copies of the *Los Angeles Times'* reporting is attached to Composite Exhibit A of the Girones Declaration. *See* Girones Decl. at Comp. Ex. A, pp. 10-23, 37. Plaintiff specifically refers to and quotes from the *Los Angeles Times'* reporting in his Complaint, and the article is central to his defamation claim that Defendants knowingly published unprivileged, false, and defamatory statements concerning him. (Doc. 1 ¶¶ 48, 49, 73, 74, 103, 126, Ex. 5) (quoting articles and alleging Defendants did not rely on reliable sources).

[4] Plaintiff's exhibit is incomplete. A complete copy of the September 4 Article is attached as Exhibit C to the Girones Declaration.

indicated the charge had "nothing to do with any political campaign or voter, Let The Voters Decide,[5] voter registrations, elections or any other matter . . ." *Id.*

On September 22, 2020, Defendants published a second article entitled "Kanye West's campaign has hired GOP operative with history of controversial work." (Doc. 1, Ex. 4) ("the September 22 Article").[6] The September 22 Article concerned Nathan Sproul—a longtime Republican operative—and his work for West's campaign in light of his controversial past involving several fraud investigations, including a Federal Election Commission investigation. *Id.* Though the article focuses primarily on Sproul, it does briefly mention Plaintiff's work for the West campaign and explains Plaintiff was arrested and charged with four felonies related to voter registration fraud. *Id.* The September 22 Article also contains Plaintiff's denials with respect to the connection between the misdeameanor plea and his political work. *Id.*

On October 9, 2020 Plaintiff sued Defendants for defamation and defamation by implication, challenging the following statement in the September 4 Article: "Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party." (Doc. 1 ¶¶ 102, 118-119).[7]

---

[5] Let The Voters Decide is one of Plaintiff's signature-gathering firms and was the firm hired to work on West's campaign in several states. (Doc. 1 ¶ 56).

[6] Plaintiff's exhibit is incomplete. A complete copy of the September 22 Article is attached as Exhibit D to the Girones Declaration.

[7] The Complaint repeatedly refers to the "articles" and "statements" at issue in the plural, transcribes the September 22 Article into the Complaint and incorporates all of the prior allegations into each count of the Complaint. (Doc. 1 ¶¶ 14-17, 75-76, 99, 117, 119). As a result, the Complaint is unclear as to whether Plaintiff purports to state a claim with respect to the September 22 Article. Prior to filing this motion, the undersigned sought clarification from Plaintiff's counsel. On December 16, 2020, Plaintiff's counsel advised in writing that Plaintiff is not stating a claim with respect to the September 22 Article but refused to stipulate to that effect. Therefore, out of an abundance of caution, Defendants assert that any purported defamation claim as to the September 22 Article is due to be dismissed because (1) Plaintiff has not provided
(*footnote continued on next page*)

**Argument**

Both federal and Florida courts stress the prominent function courts play in defamation cases and favor the early dismissal of untenable claims. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because] in these cases there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation"); *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing the court's "prominent function" in defamation cases to "either dismiss[] the complaint for failure to state a cause of action or [ ] grant[] a directed verdict at the proof stage"). To be sure, pretrial disposition is especially appropriate in defamation cases because of "the chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978).

Plaintiff's Complaint cannot survive this Court's scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and disposition of this case at the dismissal stage is appropriate. The purpose of Rule 12(b)(6) is to permit the court to terminate actions, such as this one, that are fatally flawed from the start, to spare the litigant and the court the burdens of unnecessary pretrial and trial activity. When evaluating a motion to dismiss a court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). However, a court need not accept "a formulaic recitation of the elements of a cause of action."

---

pre-suit notice, (2) has not identified the purportedly defamatory statements at issue, and (3) the article, as a whole, is not defamatory. To the extent Plaintiff's response to this Motion contradicts his counsel's representations, Defendants will seek leave to file a reply that more fully addresses counsel's representations and these defenses.

5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'[N]aked assertions' devoid of 'further factual enhancement'" are also insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Papasan v. Alain*, 478 U.S. 265, 286 (1986) (courts are "not bound to accept as true a legal conclusion couched as a factual allegation"). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations omitted).

   Plaintiff's claim is not plausible. In order to state a valid defamation claim pursuant to Florida law, Plaintiff must plead and prove the following elements: (1) a false and defamatory statement of and concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) damages. *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)). Plaintiff's Complaint fails to state a claim for which relief can be granted for several independent reasons. First, as a public figure, Plaintiff is required to plead actual malice on the part of Defendants, yet he did not—and simply cannot—plead the requisite intent. Moreover, the challenged statement is substantially true, and therefore cannot form the basis of a defamation claim. And Plaintiff's defamation by implication claim fails because it is premised on allegedly <u>false</u> statements, and, under Florida law, a defamation by implication claim must be based upon truthful statements. Thus, Plaintiff is unable to state a viable claim against Defendants, and the Complaint must be dismissed.

**I.   Plaintiff has failed to plead the requisite fault standard.**

In a defamation action, a plaintiff must allege acts sufficient to show the defendant acted with the requisite degree of fault. Where, as here, the plaintiff is a public figure, he must allege that the defendant published the statements at issue with actual malice, *i.e.*, with knowledge of their falsity or with a reckless disregard for their truth or falsity. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 (1974); *Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 570 (Fla. 2d DCA 2006). Plaintiff's Complaint does not meet this daunting standard.

   A. *Plaintiff is a Public Figure.*

Whether Plaintiff is a public figure is a "question of law to be determined by the court." *Mile Marker, Inc.*, 811 So. 2d at 845. It is appropriate for this Court to determine Plaintiff's status as a public figure on a motion to dismiss. *Turner v. Wells*, 879 F.3d 1254, 1271 (11th Cir. 2018) (finding plaintiff to be a public figure and affirming dismissal); *Michel*, 816 F.3d at 706 (same).

There are two categories of public figures: general purpose and limited purpose. *Turner*, 879 F.3d at 1272. "General public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice." *Id.* By contrast, limited purpose public figures are those "who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Id.*; *see also Gertz*, 418 U.S. at 351; *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996). The inquiry into whether a plaintiff is a limited purpose public figure involves three steps: (1) identifying whether there is a public controversy; (2) determining whether plaintiff played a central role in the controversy; and (3) determining whether the challenged statements were germane to the plaintiff's role in the controversy. *Friedgood v. Peters Publ'g Co.*, 521 So. 2d

236, 239 (Fla. 4th DCA 1988); *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 76 (Fla. 4th DCA 1986).

Here, Plaintiff's status as a well-known political strategist who manages (by his own accounts) "the largest network of professional petition circulators in the country," as well as the extensive press coverage he received and in which he actively participated, establish that he is a general purpose public figure. (Doc. 1 ¶ 60). Indeed, political strategists, such as Plaintiff, are routinely considered public figures because they voluntarily place themselves in a position and act in a manner which invites public scrutiny and comment. *See e.g.*, *Silvester v. Am. Broad. Co.*, 839 F.2d 1491, 1494 (11th Cir. 1988); *see also Bongino v. Daily Beast Co., LLC*, No. 19-14472, 2020 WL 6470639, at *1 (S.D. Fla. Aug. 6, 2020) (finding political commentator was public figure); *Miller v. Gizmodo Media Grp., LLC*, 407 F. Supp. 3d 1300, 1302-03, 1310 n. 9 (S.D. Fla. 2019) (noting Plaintiff, who is a political strategist and commentator, was a public figure); *Fuller v. Russell*, 311 Ark. 108, 111 (1992) (political consultant was a public figure).

At a minimum, Plaintiff is a limited purpose public figure for the purpose of this case. Indeed, at the time of the September 4 Article there existed a public controversy. A public controversy is defined broadly as "any topic upon which sizeable segments of society have different, strongly held views." *Della-Donna*, 489 So. 2d at 76. "If the issue was being debated publicly and if it had foreseeable and substantial ramifications for non-participants, it was a public controversy." *Id.* (quoting *Waldbaum v. Fairchild Publ'n, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980)); *see also Dubai World Corp. v. Jaubert*, No. 09-14314-CIV, 2011 WL 579213, at *15 (S.D. Fla. Feb. 9, 2011). Indeed, "a court may not question the legitimacy of the public's concern . . . [because] such an approach would turn courts into censors of what information is relevant to self-government." *Waldbaum*, 627 F.2d at 1296-97 (internal quotations omitted).

Here, at the time of the September 4 Article, there existed public controversies concerning West's presidential campaign and its motivation, Plaintiff's involvement in West's presidential campaign, and his 2008 misdemeanor plea. *See* Girones Decl. at Comp. Ex. A. Plaintiff indisputably played a central role in the controversies, and he made multiple public comments throughout the years about his guilty plea and the related charges. *Waldbaum*, 627 F.2d at 1298 (individuals who try to influence a public controversy assume the risk they will be examined with a critical eye). And, of course, the alleged defamation is germane to the controversies, as the statement at issue solely pertains to those controversies.

Plaintiff's status as a strategist well known for his work with the Republican Party, combined with significant press coverage and his history of responding to allegations of voter fraud and deception, establish him as a public figure at this stage in the proceedings. Defendants, like other media outlets, simply reported on Plaintiff's most recent controversy and relayed the allegations underlying his guilty plea. As such, with respect to the circumstances surrounding West's campaign and Plaintiff's voter registration fraud plea, Plaintiff is a public figure.

B.  *Plaintiff fails to plausibly plead actual malice.*

Because Plaintiff is a public figure, he must meet the "daunting" standard of actual malice. *Klayman v. City Pages*, No. 5:13-cv-143, 2015 WL 1546173, at *40 (M.D. Fla. Apr. 3, 2015). Failure to do so will lead to dismissal of the action. *Michel*, 816 F.3d at 702 ("every circuit that has considered the matter has applied the *Iqbal*/*Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice"); *see also Turner*, 879 F.3d at 1274 (affirming dismissal of defamation case brought by limited-purpose public figure for failure to adequately plead actual malice). A plaintiff must do more than invoke the "magic words" of

actual malice; failure to do so dooms a plaintiff's claim. *See e.g.*, *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) (general conclusory allegations that statements were made with "actual malice" are insufficient to plead the claim); *Frieder v. Prince*, 308 So. 2d 132, 134 (Fla. 3d DCA 1975) (affirming dismissal because complaint "fails to set forth facts which are legally sufficient to establish actual malice").

Actual malice is a concept designed to afford breathing space for journalists to investigate and report on matters of public concern—such as the criminal convictions of political strategists tied to a presidential campaign. The actual malice standard requires plaintiffs to "allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Turner*, 879 F.3d at 1273. The standard is not satisfied "merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'n, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Instead, the question is "whether the defendant . . . actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 703. Therefore, even proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" will not establish actual malice. *Harte-Hanks*, 491 U.S. at 664-65 n. 5.

Plaintiff has not pleaded, and cannot plead, facts supporting a reasonable inference that the September 4 Article was published with knowledge that it was false or belief that it was probably false. Though Plaintiff does sprinkle the phrase "actual malice" and related terms throughout the Complaint, the "factual" allegations supporting his conclusory statements of law amount to claims that Defendants supposedly failed to "adequate[ly] investigat[e]" the

statements, "did not rely on reliable sources," and ignored Plaintiff's denials. (Doc. 1 ¶¶ 53, 103, 105-107, 114, 126, 128, 134). None of these allegations—even if true—constitute actual malice.

Plaintiff's allegation that there was not a sufficiently thorough investigation fails to meet the actual malice standard. *Michel*, 816 F.3d at 703 ("[A] failure to investigate, standing on its own, does not indicate the presence of actual malice.") (citation omitted); *Klayman*, 2015 WL 1546173, at *16 (rejecting argument that defendants' failure to contact plaintiff prior to publication establishes actual malice). Rather, Plaintiff was required to allege facts showing that Defendants purposefully avoided further investigation with the intent to avoid the truth. *Michel*, 816 F.3d at 703; *see also Moore v. Cecil*, No. 4:19-cv-1855, 2020 WL 5603044, at *11, 14 (N.D. Ala. Sept. 18, 2020) (dismissing claims where plaintiff pleaded no facts that would prove defendant had serious doubts about statements contained in multiple reports); *Rosanova v. Playboy Enter., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978) (finding "subjective awareness of probable falsity [requirement] cannot be found where, as here, the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied"). Whatever the scope of Defendants' investigation, Plaintiff has not alleged, and cannot plausibly allege, that Defendants doubted the veracity of the press release from the California Secretary of State's Office and the *Los Angeles Times* articles. Indeed, Plaintiff fails to allege why Defendants would have any reason to doubt the sources and information upon which they relied.

Moreover, Plaintiff's allegations concerning the unreliability of Defendants' sources— the California government and its largest newspaper of record—are insufficient to establish actual malice. Particularly in this case, the sources relied upon by Defendants are far from the level of "unreliability" that would cause courts a moment's pause. For example, courts have found a publisher's reliance on drug smugglers and tax fraudsters insufficient to constitute actual

11

malice. *See, e.g., Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010) (source's tax fraud conviction did not justify actual malice finding where there were "no obvious reasons for ESPN to doubt the challenged statements"); *Lam v. Univision Commc'n, Inc.*, No. 2019-016891-CA-01, 2019 WL 6830882, at *4 (Fla. 11th Cir. Ct. Nov. 2, 2019) (reliance on former drug smuggler turned informant does not establish actual malice). Here, Defendants relied on government records and reputable news sources[8] in publishing the statements. If courts have found reliance on sources with criminal records and checkered pasts insufficient to constitute actual malice, surely Defendants' reliance on the California government and the state's largest newspaper belies any indicia of actual malice.

Finally, Plaintiff alleges that he "informed" Defendants, prior to the publication of the September 4 Article, that his prior misdemeanor plea "had nothing to do with any political campaign or voter, Let the Voters Decide, voter registrations, elections or any other matter." (Doc. 1 ¶¶ 10, 106). As a result, he claims Defendants' publication was made with actual malice.[9] But Defendants' decision to publish the September 4 Article despite Plaintiff's denials does not, as a matter of settled law, constitute actual malice. *See Lam*, 2019 WL 6830882, at *3

---

[8] This Court may take judicial notice of the fact that the *Los Angeles Times* is a recognized daily newspaper of general circulation. *See* Fed. R. Evid. 201(b) (a court may take judicial notice of "a fact that is not subject to reasonable dispute" and is either "generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[9] To the extent Plaintiff alleges Defendants acted with actual malice in not issuing a retraction (Doc. 1 ¶¶ 70-77), such allegations are likewise insufficient to satisfy the standard. *Klayman*, 2015 WL 1546173, at * 15 (fact that plaintiff alerted defendants after publication that he believed statements were false and wanted some kind of retraction did not establish actual malice). This is because, as discussed, the standard requires a subjective awareness of the falsity of the statements <u>at the time of publication</u>. *See* Fla. Std. Jury Instr. (Civil) § 405.7 (requiring clear and convincing evidence that publisher acted with actual malice <u>at the time the statement was made</u>).

12

("Florida courts consistently hold that a defendant's decision to publish despite a plaintiff's denials is not actual malice as a matter of law"). A publisher "is not 'required to accept denials of wrongdoing as conclusive.'" *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 780 (S.D. Fla. 1986); *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 296 (Fla. 2d DCA 2001) (concluding that a publisher's failure to print denials did not constitute actual malice). Importantly, Defendants <u>included</u> Plaintiff's denials in the September 4 Article. (Doc. 1, Ex. 1); Girones Decl. at Ex. C. Such inclusion negates a finding of actual malice. *See e.g., Michel*, 816 F.3d at 703 (including "information contrary to the general conclusions reached in an article . . . tends to undermine the claims of malice"). This is because inclusion of such information allows readers and viewers to judge an article's "veracity" for themselves and "reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher itself has." *Id.*

In sum, Plaintiff's bare allegations that Defendants conducted an inadequate investigation, relied upon supposedly "unreliable" sources (the California government and the *Los Angeles Times*), and refused to alter its reporting based on Plaintiff's denials, even if accepted as true, do not and cannot amount to actual malice. Because Plaintiff has failed to plead plausible facts showing that Defendants in fact "entertained serious doubts" as to the truth of the September 4 Article, his claim is without merit as a matter of law and must be dismissed.

## II.     The challenged statement is substantially true.

Even if Plaintiff had pleaded the requisite fault standard, his defamation claim fails because the challenged statement is substantially true. Under the substantial truth doctrine,[10]

> [n]ewspapers are not to be held to the exact facts or to the most minute details of the transactions they publish, … what the law requires is that the publication shall

---

[10] It is appropriate for the Court to address the issue of substantial truth on a motion to dismiss, either as a defense or as part of the falsity element of the Plaintiff's case. *See Marder v. TEGNA Inc.*, No. 19-81283, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (dismissing statement
(*footnote continued on next page*)

> be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial.

*McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962) (citation omitted). It is only in cases in which the complained of statement would have a "different effect" upon the reader than the allegedly truthful statement set forth in the Complaint, where an assertion of substantial truth will be overcome. *E.g., Hill v. Lakeland Ledger Publ'g Corp.*, 231 So. 2d 254, 256 (Fla. 2d DCA 1970); *McCormick*, 139 So. 2d at 200. Put simply, in applying the "different effect" test, courts substitute the allegedly true statement for the allegedly false statement and determine if the allegedly true statement would have a "different effect" upon the reader.

Minor or technical inaccuracies in an allegedly false and defamatory statement are not a sufficient basis to defeat a claim of substantial truth unless those inaccuracies alter the "gist" or "sting" of the statement. *Masson v. New Yorker Magazine*, 501 U.S. 496, 516 (1991); *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706-07 (Fla. 3d DCA 1999). The policy behind this defense is that

> [n]ot every error or inaccuracy should be actionable. The error should be a significant variation from the truth to give rise to liability. In order to avoid a "chilling" effect on the exercise of First Amendment rights, the media must be allowed "breathing space."

*Clark v. Clark*, 21 Media L. Rep. 1650, 1653 (Fla. 4th Cir. Ct. 1993).

In this case, the allegedly false and defamatory statement is substantially true and not actionable. The full statement upon which this action is predicated reads:

---

that was substantially true); *Cape Publ'n, Inc. v. Reakes*, 840 So. 2d 277, 280 (Fla. 5th DCA 2003) (discussing substantial truth as an analysis as part of the falsity element of a defamation claim); *Smith v. Cuban American Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999) (stating that "[a]ccording to the U.S. Supreme Court and Florida case law, falsity only exists if the publication is substantially and materially false, not just if it is technically false").

14

> Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party. A representative for the company said, "This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let The Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible."

(Doc. 1 ¶ 100, 102, Ex. 1). The "gist" or "sting" of that statement is that Plaintiff pleaded guilty to voter registration fraud. That is, in fact, the charge to which Plaintiff pleaded guilty.

Plaintiff does not allege it was defamatory to associate him with the Republican party generally, nor could he premise his claims on such an association because identifying an individual as connected with a particular political party, even if false, is not defamatory as a matter of law. Robert D. Sack, *Sack on Defamation*, § 2:4.1, 5th ed. (2018) ("to refer to a Republican wrongly as a Democrat (or vice versa)…is unlikely to cause material injury to reputation. Although it is doubtful that the person about whom the statement is made will be pleased by the falsehood, that does not make it defamatory."). Instead, Plaintiff claims that the statement is inaccurate because it states the fraud was related to his work for the California Republican Party when the truth, he claims, is that he committed the fraud separate from his work. *Id.* at ¶¶ 43-45, 53, 102, 120. This minor, technical inaccuracy is irrelevant under the First Amendment. The effect on the mind of a reader of the challenged statement, and Plaintiff's denial immediately following the statement, is that Plaintiff pleaded guilty to voter registration fraud. Excluding the words "related to his work for the California Republican Party" does not produce a different effect than that produced by his own guilty plea. *See e.g., Nichols v. Moore*, 477 F.3d 396, 398, 401 (6th Cir. 2007) (dismissing defamation claim based on statement that plaintiff was "arrested in connection" with the Oklahoma City bombing, when he was arrested for an unrelated explosives offense because the distinction was not significant enough to make the misstatement actionable); *Bustos v. A & E Television Networks*, 646 F.3d 762, 762, 767 (10th

15

Cir. 2011) (distinction between statement that plaintiff was a "member" of the Aryan Brotherhood as opposed to "conspired with" the Brotherhood was immaterial because "while it may not be *precisely* true, it is *substantially* true") (emphasis in original). The gist or sting remains the same: Plaintiff pleaded guilty to voter fraud. Thus, even if the challenged statement is not perfectly accurate, Plaintiff's defamation claim fails because the statement is substantially true.

### III. Plaintiff cannot state a claim for defamation by implication.

In Count II of the Complaint, Plaintiff also purports to set forth a defamation by implication claim against Defendants (Doc 1, Count II), but Plaintiff's defamation by implication claim fails for a very fundamental reason. Under Florida law, a defamation by implication claim must be based upon truthful statements. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). As the Florida Supreme Court explained, a defamation by implication claim occurs when a defendant's factual statements are "literally true," but "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Id.* at 1106, 1108.

Here, Plaintiff does not allege Defendants juxtaposed a series of true facts or otherwise omitted facts in order to convey a false impression of the stated truth. Rather, Plaintiff alleges the statement concerning his misdemeanor plea was "literally false" and asserts various denials as to the truth of the statement published. (Doc. 1 ¶¶ 24, 118-120). Because the Complaint alleges that the statement is not literally true, its publication cannot give rise to a defamation by implication claim, as a matter of law. *Rapp*, 997 So. 2d at 1108. Instead, Plaintiff is merely reiterating his

16

defamation claim from Count I, which fails for the reasons stated above.[11] As such, the defamation by implication claim is entirely superfluous and should be dismissed with prejudice.

## Conclusion

Plaintiff's Complaint must be dismissed. He did not adequately plead the requisite intent, and any amendment to do so would be futile. Further, while Plaintiff may take issue with his past misdemeanor adjudication, the challenged statement is substantially true. Finally, Plaintiff's defamation by implication claim is premised upon allegedly false statements and thus fails to plead the requisite elements of defamation by implication, which by definition rests on allegations of truthful statements giving rise to a defamatory implication. Plaintiff has failed to state any cause of action against the Defendants as a matter of law. Thus, Defendants respectfully request this Court dismiss Plaintiff's Complaint with prejudice.

Dated: December 21, 2020

                                              Respectfully submitted,

                                              */s/ Deanna K. Shullman*
                                              Deanna K. Shullman
                                              Florida Bar No. 514462
                                              Giselle M. Girones
                                              Florida Bar No. 124373
                                              Minch Minchin
                                              Florida Bar No. 1015950
                                              Shullman Fugate PLLC
                                              2101 Vista Parkway, Suite 4006
                                              West Palm Beach, FL  33411
                                              Telephone: (561) 429-3619
                                              dshullman@shullmanfugate.com
                                              ggirones@shullmanfugate.com
                                              mminchin@shullmanfugate.com
                                              *Attorneys for Defendants Cable News Network, Inc. and Sara Murray*

---

[11] Plaintiff further fails to allege facts which have been juxtaposed or omitted to create a defamatory implication, and of course, cannot do so since he is, in fact, attempting to allege direct defamation based on facts he claims are false.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/ Deanna K. Shullman*
Deanna K. Shullman
