## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARK JACOBY,                                    Case No.:  6:20-cv-01871-PGB-GJK

    Plaintiff,

vs.

CABLE NEWS NETWORK, INC. and
SARA MURRAY,

  Defendants.

_____/

## DEFENDANTS CABLE NEWS NETWORK, INC. AND SARA MURRAY'S
## DISPOSITIVE MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, Defendants Cable News

Network, Inc. ("CNN, Inc.") and Sara Murray ("Murray") (collectively, "Defendants") move this

Court to dismiss Plaintiff Mark Jacoby's ("Plaintiff") Amended Complaint ("Amended

Complaint") (Doc. 36) in this action for failure to state a claim. In support of this motion,

Defendants state:

### Introduction

In this action, Plaintiff seeks to hold Defendants liable for their truthful reporting about

Kanye West's presidential campaign in two articles published in September 2020. Plaintiff's

Amended Complaint, like its previous iteration, warrants dismissal.

Plaintiff again fails to adequately plead the requisite intent required of a public figure in a

defamation action. Moreover, the September 4, 2020 article, when taken as a whole, is not

defamatory of Plaintiff, and the challenged statement is substantially true. Plaintiff's defamation

by implication claim as to the September 4, 2020 article also fails because it is premised upon

allegedly <u>false</u> statements, contrary to Florida law, thereby merely duplicating his defamation

claim. And, his newly alleged defamation by implication claim concerning the September 22,

2020 article likewise fails because it is incapable of the defamatory construction Plaintiff alleges.

In short, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted

and must be dismissed in its entirety.

**<u>Background</u>**

On July 4, 2020, Kanye West—billionaire rapper and ardent supporter of President

Trump—announced his bid for presidency. In the months leading up to the election, many

speculated West's belated bid was a calculated effort to siphon votes from Democractic-nominee

Joe Biden. Indeed, despite West's eleventh-hour announcement, he was able to garner support

from a variety of well-known Republican strategists who worked to advance his campaign.

Plaintiff, a professional signature collector, was among those strategists assisting West's

efforts to collect signatures in select states. Plaintiff owns several signature-gathering firms

known for supporting various pro-Republican causes in Florida, California, Arizona and

Massachusetts, unrelated to West. He is also no stranger to the spotlight. Indeed, he has regularly

been the subject of news coverage concerning instances of voter fraud and deception. *See*

Declaration of Giselle M. Girones, at Comp. Ex. A (Doc. 32).[1]

In 2008, Plaintiff was arrested on voter fraud charges in California. At the time,

Plaintiff's company, Young Political Majors, LLC ("YPM"), had been hired by the California

Republican Party to register voters. According to the California Secretary of State's Office,

---

[1] Copies of these articles are attached to the Girones Declaration previously filed with this Court (Doc. 32). These articles are a sampling of the press coverage Plaintiff received concerning voter deception and voter fraud charges. This Court may take judicial notice of these articles that establish Plaintiff is a public figure. *See Turner v. Wells*, 879 F.3d 1254, 1272 n. 5 (11th Cir. 2018) (noting that the court may take "judicial notice of the existence of . . . articles written about [plaintiff]" but not for the truth of the matters asserted).

Plaintiff was arrested and charged with four felonies for using a California address to meet the state's requirement for signature-gatherers.[2] Plaintiff ultimately pleaded guilty to a misdemeanor charge. After entry of the plea, the Los Angeles District Attorney's Office issued a press release reiterating that Plaintiff acted in an effort to appear to meet the legal requirement for signature-gatherers. As a result, multiple outlets, including the *Los Angeles Times*, reported the fraud was linked to Plaintiff's work with the California Republican Party.[3]

On September 4, 2020, Defendants published an article entitled "Kanye West isn't going to be president, but his unconventional bid forges on." (Doc. 36 at Ex. 2) ("the September 4 Article").[4] The September 4 Article focused on the campaign's failed efforts to appear on the ballot in Virginia and Arizona. *Id.* It also discussed a number of GOP political strategists assisting West's campaign, including Plaintiff. *Id.* Like the various other reports, the September 4 Article noted Plaintiff had previously pleaded guilty to voter registration fraud related to his work for the California Republican Party. *Id.* It also included a statement from Plaintiff, who

---

[2] A copy of the press release issued by the Secretary of State's Office is attached to the Girones Declaration as Exhibit B (Doc. 32). On a motion to dismiss, a court may consider documents that a complaint incorporates by reference. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (court may consider document not attached to complaint when "a plaintiff refers to [that] document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (same). Plaintiff initially pleaded that the press release was one of Defendants' sources and quoted extensively from it (Doc. 1 ¶¶ 47, 73, 74, 103, 126, Ex. 5), but in a transparent effort to avoid dismissal, he now alleges Defendants did not rely on any sources. (Doc. 36 ¶¶ 39, 97, 125, 157). The press release remains part of the pleadings, despite amendment, and this Court may consider it on dismissal. *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009); *Shallenburg v. PNC Bank, N.A.*, No. 8:18-cv-2225, 2020 WL 555447, at *13 (M.D. Fla. Feb. 4, 2020) (citing *Gross*, 340 F. App'x at 534); *Stevenson v. Corp. of Lloyd's*, No. 8:15-cv-2745, 2016 WL 524735, at *1 n. 2 (M.D. Fla. Feb. 10, 2016) (same).

[3] Copies of the *Los Angeles Times'* reporting is attached to Composite Exhibit A of the Girones Declaration. *See* (Doc 32 at Comp. Ex. A, pp. 10-23, 37). As is the case with the California government records, Plaintiff initially identified the newspaper as one of Defendants' sources. *See* (Doc. 1 ¶¶ 48, 49, 73, 74, 103, 126, Ex. 5). He omits reference to the *Los Angeles Times'* reporting in his Amended Complaint in an effort to avoid dismissal on the issue of actual malice. Nevertheless, the Court may consider the reporting as it is not outside of the pleadings. *See* note 2, *supra*.

[4] Plaintiff's exhibit is incomplete. A complete copy of the September 4 Article is attached as Exhibit C to the Girones Declaration (Doc. 32).

indicated the charge had "nothing to do with any political campaign or voter, Let The Voters Decide,[5] voter registrations, elections or any other matter . . ." *Id.*

On September 22, 2020, Defendants published a second article entitled "Kanye West's campaign has hired GOP operative with history of controversial work." (Doc. 36 at Ex. 4) ("the September 22 Article").[6] The September 22 Article concerned Nathan Sproul—a longtime Republican operative—and his work for West's campaign in light of his controversial past involving several fraud investigations, including a Federal Election Commission investigation. *Id.* The article discusses allegations of fraud and impropriety surrounding the West campaign in Virginia, Wyoming and New Jersey. *Id.* Though the article focuses primarily on Sproul, it does briefly mention Plaintiff's work for the West campaign and explains Plaintiff was arrested and charged with four felonies related to voter registration fraud. *Id.* The September 22 Article also contains Plaintiff's denials with respect to the connection between the misdeameanor plea and his political work. *Id.* It further explicitly explains that there is no connection between Plaintiff or his firm and the allegations surrounding West's campaign. *Id.*

On October 9, 2020 Plaintiff sued Defendants for defamation and defamation by implication, challenging a single statement in the September 4 Article. (Doc. 1). After Defendants filed their motion to dismiss, Plaintiff filed an Amended Complaint mirroring the original pleading but omitting references to documents and sources Defendants relied upon. The Amended Complaint also adds new allegations, which only bolster support for dismissal. Counts I and II, asserting defamation and defamation by implication respectively, concern the following

---

[5] Let The Voters Decide is one of Plaintiff's signature-gathering firms and was the firm hired to work on West's campaign in several states. (Doc. 36 ¶ 43).

[6] Plaintiff's exhibit is incomplete. A complete copy of the September 22 Article is attached as Exhibit D to the Girones Declaration (Doc. 32).

statement in the September 4 Article: "Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party." (Doc. 36 ¶¶ 2, 9, 90, 92, 113-116). Count III alleges a defamation by implication claim arising from the following statements in the September 22 Article:

- "Back in 2008, Jacoby was arrested and charged with four felonies related to voter registration fraud. He ended up pleading guilty to a lesser misdemeanor voter registration fraud charge."

- "Representatives for Jacoby have repeatedly insisted his misdemeanor plea is not relevant to his political work."

(Doc. 36 ¶¶ 13-15, 21, 64, 141, 144). Notably, Plaintiff's Amended Complaint continues to insufficiently plead the facts necessary to allege actual malice. Further, the September 4 Article as a whole is substantially true and incapable of defamatory meaning. The challenged statement also cannot form the basis of a defamation by implication claim because it is based upon an allegedly false statement. Lastly, the September 22 Article is incapable of the defamatory implications alleged, as explained below. As such, Defendants' reporting cannot form the basis for Plaintiff's Amended Complaint, which should be dismissed with prejudice.

## Argument

Both federal and Florida courts stress the prominent function courts play in defamation cases and favor the early dismissal of untenable claims. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because] in these cases there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation"); *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing the court's "prominent function" in defamation cases to "either dismiss[] the complaint for failure to state a cause of action or [ ] grant[] a

directed verdict at the proof stage"). To be sure, pretrial disposition is especially appropriate in defamation cases because of "the chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978).

Plaintiff's Amended Complaint cannot survive this Court's scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and disposition of this case at the dismissal stage is appropriate. The purpose of Rule 12(b)(6) is to permit the court to terminate actions, such as this one, that are fatally flawed from the start, to spare the litigant and the court the burdens of unnecessary pretrial and trial activity. When evaluating a motion to dismiss a court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). However, a court need not accept "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'[N]aked assertions' devoid of 'further factual enhancement'" are also insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Papasan v. Alain*, 478 U.S. 265, 286 (1986) (courts are "not bound to accept as true a legal conclusion couched as a factual allegation"). Courts also need not accept as true internally inconsistent factual claims. *Robinson v. Jones*, No. 3:15-cv-496, 2016 WL 8470183, at *9 (N.D. Fla. Dec. 16, 2016); *SFM Holdings Ltd. v. Fisher*, No. 08-81177, 2010 WL 11504747, at *4 (S.D. Fla. Apr. 22, 2010), *vacated on other grounds*, 465 F. App'x 820 (11th Cir. 2012) (dismissing complaint with irreconcilable inconsistent allegations). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations omitted).

Plaintiff's claim is not plausible. In order to state a valid defamation claim pursuant to Florida law, Plaintiff must plead and prove the following elements: (1) a false and defamatory statement of and concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) damages. *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)). Plaintiff's Amended Complaint fails to state a claim for which relief can be granted for several independent reasons. First, as a public figure, Plaintiff is required to plead actual malice on the part of Defendants, yet he did not—and simply cannot—plead the requisite intent. Moreover, Plaintiff's claims concerning the September 4 Article fail because the challenged statements are substantially true, and the article, as a whole, is not defamatory as a matter of law.[7] Finally, Plaintiff's defamation by implication claim stemming from the September 22 Article is fatally flawed because the alleged implication that his prior plea is related to his political work is substantially true and any further defamatory implication is not derived from the words used in the article. Thus, Plaintiff is unable to state a viable claim against Defendants, and the Amended Complaint must be dismissed.

## I.     Plaintiff Has Failed to Plead the Requisite Fault Standard.

In a defamation or defamation by implication action, a plaintiff must allege <u>facts</u> sufficient to show the defendant acted with the requisite degree of fault. Where, as here, the plaintiff is a public figure, he must allege that the defendant published the statements at issue with actual malice, *i.e.*, with knowledge of their falsity or with a reckless disregard for their truth or falsity. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 (1974); *Rasmussen v. Collier Cnty.*

---

[7] The defamation by implication claim concerning the September 4 Article (Count II) fails because it is premised on an allegedly <u>false</u> statement, and, under Florida law, a defamation by implication claim must be based upon <u>truthful</u> statements.

*Publ'g Co.*, 946 So. 2d 567, 570 (Fla. 2d DCA 2006). Plaintiff's Amended Complaint does not meet this daunting standard.

### A. *Plaintiff is a Public Figure.*

Whether Plaintiff is a public figure is a "question of law to be determined by the court." *Mile Marker, Inc.*, 811 So. 2d at 845. It is appropriate for this Court to determine Plaintiff's status as a public figure on a motion to dismiss. *Turner v. Wells*, 879 F.3d 1254, 1271 (11th Cir. 2018) (finding plaintiff to be a public figure and affirming dismissal); *Michel*, 816 F.3d at 706 (same).

There are two categories of public figures: general purpose and limited purpose. *Turner*, 879 F.3d at 1272. "General public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice." *Id.* By contrast, limited purpose public figures are those "who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Id.*; *see also Gertz*, 418 U.S. at 351; *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996). The inquiry into whether a plaintiff is a limited purpose public figure involves three steps: (1) identifying whether there is a public controversy; (2) determining whether plaintiff played a central role in the controversy; and (3) determining whether the challenged statements were germane to the plaintiff's role in the controversy. *Friedgood v. Peters Publ'g Co.*, 521 So. 2d 236, 239 (Fla. 4th DCA 1988); *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 76 (Fla. 4th DCA 1986).

Here, Plaintiff cannot avoid his status as a well-known political strategist who manages (by his own accounts) "the largest network of professional petition circulators in the country," and cannot escape the effect of the extensive press coverage he received and in which he actively

participated, all of which establish that he is a general purpose public figure. (Doc. 36 ¶ 47). Indeed, political strategists, such as Plaintiff, are routinely considered public figures because they voluntarily place themselves in a position and act in a manner which invites public scrutiny and comment. *See e.g.*, *Silvester v. Am. Broad. Co.*, 839 F.2d 1491, 1494 (11th Cir. 1988); *see also Bongino v. Daily Beast Co., LLC*, No. 19-14472, 2020 WL 6470639, at *1 (S.D. Fla. Aug. 6, 2020) (finding political commentator was public figure); *Miller v. Gizmodo Media Grp., LLC*, 407 F. Supp. 3d 1300, 1302-03, 1310 n. 9 (S.D. Fla. 2019) (noting Plaintiff, who is a political strategist and commentator, was a public figure); *Fuller v. Russell*, 842 S.W.2d 12, 14 (Ark. 1992) (political consultant was a public figure).

At a minimum, Plaintiff is a limited purpose public figure for the purpose of this case. Indeed, at the time of Defendants' reporting, there existed a public controversy. A public controversy is defined broadly as "any topic upon which sizeable segments of society have different, strongly held views." *Della-Donna*, 489 So. 2d at 76. "If the issue was being debated publicly and if it had foreseeable and substantial ramifications for non-participants, it was a public controversy." *Id.* (quoting *Waldbaum v. Fairchild Publ'n, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980)); *see also Dubai World Corp. v. Jaubert*, No. 09-14314, 2011 WL 579213, at *15 (S.D. Fla. Feb. 9, 2011). "A court may not question the legitimacy of the public's concern . . . [because] such an approach would turn courts into censors of what information is relevant to self-government." *Waldbaum*, 627 F.2d at 1296-97 (internal quotations omitted).

Prior to Defendants' reporting there existed public controversies concerning West's presidential campaign and its motivation, Plaintiff's involvement in West's presidential campaign, and his 2008 misdemeanor plea. *See* (Doc. 32 at Comp. Ex. A). Plaintiff indisputably played a central role in the controversies, and he made multiple public comments throughout the

years about his guilty plea and the related charges. *Waldbaum*, 627 F.2d at 1298 (individuals who try to influence a public controversy assume the risk they will be examined with a critical eye). He also was involved in and made public comments about the West campaign. And, of course, the alleged defamation is germane to these controversies, and the statements at issue solely pertain to those controversies.

Plaintiff's status as a strategist well known for his work with the Republican Party, combined with significant press coverage and his history of responding to allegations of voter fraud and deception, establish him as a public figure at this stage in the proceedings. Defendants, like other media outlets, simply reported on Plaintiff's most recent controversy and relayed the allegations underlying his guilty plea. As such, with respect to the circumstances surrounding West's campaign and Plaintiff's voter registration fraud, Plaintiff is a public figure.

### B. *Plaintiff fails to plausibly plead actual malice.*

Because Plaintiff is a public figure, he must meet the "daunting" standard of actual malice. *Klayman v. City Pages*, No. 5:13-cv-143, 2015 WL 1546173, at *40 (M.D. Fla. Apr. 3, 2015). Failure to do so will lead to dismissal of the action. *Michel*, 816 F.3d at 702 ("every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice"); *see also Turner*, 879 F.3d at 1274 (affirming dismissal of defamation case brought by limited-purpose public figure for failure to adequately plead actual malice). A plaintiff must do more than invoke the "magic words" of actual malice; failure to do so dooms a plaintiff's claim. *See e.g.*, *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) (general conclusory allegations that statements were made with "actual malice" are insufficient to plead the claim); *Frieder v. Prince*, 308 So. 2d 132, 134 (Fla.

3d DCA 1975) (affirming dismissal because complaint "fails to set forth facts which are legally sufficient to establish actual malice").

Actual malice is a concept designed to afford breathing space for journalists to investigate and report on matters of public concern—such as campaigns to be elected President of the United States and the criminal convictions of political strategists tied to those campaigns. The actual malice standard requires plaintiffs to "allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Turner*, 879 F.3d at 1273. The standard is not satisfied "merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'n, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Instead, the question is "whether the defendant . . . actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 703. Therefore, even proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" will not establish actual malice. *Harte-Hanks*, 491 U.S. at 664-65 n. 5.

In his amendment, Plaintiff has not added—and cannot add—any facts to the Amended Complaint that support a reasonable inference that Defendants' reporting was published with knowledge that it was false or subjective awareness that it was probably false. Though Plaintiff does scatter the phrase "actual malice" and related terms throughout the Amended Complaint, the "factual" allegations supporting his conclusory statements of law amount to claims that Defendants supposedly "did not rely on any sources," failed to "adequate[ly] investigat[e]" the statements, and ignored Plaintiff's denials. (Doc. 36 ¶¶ 95-97, 101, 123-125, 131, 151-154, 156-157). None of these allegations—even if true—constitute actual malice.

1.  *Plaintiff's allegations concerning Defendants' sources are insufficient to establish actual malice.*

Plaintiff's allegations concerning Defendants' sources are insufficient to establish actual malice. Curiously, Plaintiff's Amended Complaint alleges Defendants did not rely on <u>any</u> sources, directly contradicting his factual allegations in the original complaint, which acknowledged Defendants' relied upon information from the California government and its largest newspaper of record but complained those sources were not reliable. *Compare* (Doc. 1 ¶¶ 47-49, 73-74, 103, 126) (discussing press release and *Los Angeles Times*' reporting and claiming "Defendants did not rely on reliable sources") *and* (Doc. 36 ¶¶ 39, 97, 125, 157) (removing references to press release and Los Angeles Times and alleging "Defendants did not rely on any sources."). Plaintiff cannot alter the facts in his Amended Complaint to avoid dismissal. To be sure:

> A plaintiff may not plead facts in their amended complaint that contradict those in their original complaint . . . while reconcilable small variations between the complaints are acceptable, . . . where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . and directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true.

*Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019, 2017 WL 7796306, at *3 (S.D. Fla. Nov. 1, 2017) (quoting *Collition v. Cravath, Swaine & Moore LLP*, No. 08-cv-0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008)); *see also Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019, 2018 WL 8899230, at *6 (S.D. Fla. Oct. 17, 2018), *report and recommendation adopted*, 2018 WL 8899004 (S.D. Fla. Nov. 15, 2018) (same); *Wallace v. New York City Dep't of Corr.*, No. 95-cv-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (rejecting allegations in amended complaint that changed facts in order to respond to motion to dismiss and directly contradicted the facts set forth in original complaint). Plaintiff's alteration of the facts in response to Defendants' dispositive motion should be disregarded, and the Court should instead

accept as true the facts Plaintiff initially alleged (and are consistent with the truth)—that Defendants relied upon the California government and the *Los Angeles Times* in their reporting. (Doc. 1 ¶¶ 73-74, 103, 126).

Accepting these previously alleged facts as true, the sources relied upon by Defendants are far from the level of "unreliability" that would cause courts a moment's pause. For example, courts have found a publisher's reliance on drug smugglers and tax fraudsters insufficient to constitute actual malice. *See, e.g., Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010) (source's tax fraud conviction did not justify actual malice finding where there were "no obvious reasons for ESPN to doubt the challenged statements"); *Lam v. Univision Commc'n, Inc.*, No. 2019-016891-CA-01, 2019 WL 6830882, at *4 (Fla. 11th Cir. Ct. Nov. 2, 2019) (reliance on former drug smuggler turned informant does not establish actual malice). Here, in stark contrast, Defendants relied upon government records and reputable news sources[8] in publishing the statements. If courts have found reliance upon sources with criminal records and checkered pasts insufficient to constitute actual malice, surely Defendants' reliance upon the California government and the state's largest newspaper belies any indicia of actual malice.

> 2. *Plaintiff's allegations concerning Defendants' purported failure to investigate are insufficient to establish actual malice.*

Moreover, Plaintiff's allegation that there was not a sufficiently thorough investigation fails to meet the actual malice standard. *Michel*, 816 F.3d at 703 ("[A] failure to investigate, standing on its own, does not indicate the presence of actual malice.") (citation omitted); *Klayman*, 2015 WL 1546173, at *16 (rejecting argument that defendants' failure to contact

---

[8] This Court may take judicial notice of the fact that the *Los Angeles Times* is a recognized daily newspaper of general circulation. *See* Fed. R. Evid. 201(b) (a court may take judicial notice of "a fact that is not subject to reasonable dispute" and is either "generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

plaintiff prior to publication establishes actual malice). Rather, Plaintiff was required to allege facts showing that Defendants purposefully avoided further investigation with the intent to avoid the truth. *Michel*, 816 F.3d at 703; *see also Moore v. Cecil*, No. 4:19-cv-1855, 2020 WL 5603044, at *11, 14 (N.D. Ala. Sept. 18, 2020) (dismissing claims where plaintiff pleaded no facts that would prove defendant had serious doubts about statements contained in multiple reports); *Rosanova v. Playboy Enter., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978) (finding "subjective awareness of probable falsity [requirement] cannot be found where, as here, the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied"). Whatever the scope of Defendants' investigation, Plaintiff has not alleged, and cannot plausibly allege, that Defendants doubted the veracity of their sources—the records from the California government and the *Los Angeles Times* articles. Indeed, Plaintiff fails to allege why Defendants would have any reason to doubt the sources and information upon which they relied.

> 3. *Plaintiff's allegations concerning Defendants' purportedly ignoring Plaintiff's denials are insufficient to establish actual malice.*

Finally, Plaintiff alleges that, prior to publication, he "informed" Defendants that his misdemeanor plea "had nothing to do with any political campaign or voter, Let the Voters Decide, voter registrations, elections or any other matter." (Doc. 36 ¶¶ 100); *see also* (Doc. 36 ¶¶ 123, 151, 155, 164) (alleging Defendants' ignored Plaintiff's denials). As a result, he claims Defendants' publications were made with actual malice.[9] But Defendants' decision to publish the

---

[9] To the extent Plaintiff alleges Defendants acted with actual malice in not issuing a retraction (Doc. 36 ¶¶ 106-107, 132-133, 167), such allegations are likewise insufficient to satisfy the standard. *Klayman*, 2015 WL 1546173, at *15 (fact that plaintiff alerted defendants after publication that he believed statements were false and wanted some kind of retraction did not establish actual malice). This is because, as discussed, the standard requires a subjective awareness of the falsity of the statements <u>at the time of publication</u>. *See* Fla. Std. Jury Instr. (Civil) § 405.7 (requiring clear and convincing evidence that publisher acted with actual malice <u>at the time the statement was made</u>).

articles despite Plaintiff's denials does not, as a matter of well-settled law, constitute actual malice. *See Lam*, 2019 WL 6830882, at *3 ("Florida courts consistently hold that a defendant's decision to publish despite a plaintiff's denials is not actual malice as a matter of law"). A publisher "is not 'required to accept denials of wrongdoing as conclusive.'" *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 780 (S.D. Fla. 1986); *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 296 (Fla. 2d DCA 2001) (concluding that a publisher's failure to print denials did not constitute actual malice); *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("such denials are so commonplace . . . that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."). Importantly, Defendants included Plaintiff's denials in both articles. (Doc. 36 at Ex. 2, Ex. 4); (Doc. 32, Ex. C, Ex. D). Such inclusion negates a finding of actual malice. *See e.g., Michel*, 816 F.3d at 703 (including "information contrary to the general conclusions reached in an article . . . tends to undermine the claims of malice"). This is because inclusion of such information allows readers and viewers to judge an article's "veracity" for themselves and "reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher itself has." *Id.*

In sum, Plaintiff's bare allegations that Defendants relied upon supposedly "unreliable" sources (the California government and the *Los Angeles Times*), conducted an inadequate investigation, and refused to alter their reporting based on Plaintiff's denials, even if accepted as true, do not and cannot amount to actual malice. Because Plaintiff has failed to plead plausible facts showing that Defendants in fact "entertained serious doubts" as to the truth of the September 4 and September 22 Articles, his claim is without merit as a matter of law and must be dismissed.

## II.    Counts I-II Concerning the September 4 Article Do Not State A Cause of Action.

Though the lack of actual malice, alone, requires dismissal of the Amended Complaint, even if Plaintiff had adequately pleaded the requisite fault standard, Plaintiff's defamation claims fail because the September 4 Article, as a whole, is substantially true and not defamatory as a matter of law.[10]

### A.   The challenged statement is substantially true.

Under the substantial truth doctrine,[11] "[n]ewspapers are not to be held to the exact facts or to the most minute details of the transactions they publish, … what the law requires is that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial." *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962) (citation omitted). It is only in cases in which the complained of statement would have a "different effect" upon the reader than the allegedly truthful statement set forth in the complaint, where an assertion of substantial truth will be overcome. *E.g., Hill v. Lakeland Ledger Publ'g Corp.*, 231 So. 2d 254, 256 (Fla. 2d DCA 1970); *McCormick*, 139 So. 2d at 200. Put simply, in applying the "different effect" test, courts substitute the allegedly true

---

[10] In Counts I and II Plaintiff attempts to allege causes of action for defamation and defamation by implication. Defamation by implication claims must be based on <u>truthful</u> statements. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). As the Florida Supreme Court explained, a defamation by implication claim occurs when a defendant's factual statements are "literally true," but "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Id.* at 1106, 1108. If the statement is false, as Plaintiff alleges, it cannot form the basis of a defamation by implication claim. *See e.g.*, (Doc. 36 ¶¶ 2, 9, 20, 90-92, 102, 113, 119, 120). Indeed, as discussed below, the alleged defamatory implication in Count II is simply the defamatory meaning Plaintiff claims arises from the purportedly false statements at issue in Count I. Count II, therefore, must be dismissed.

[11] It is appropriate for the Court to address the issue of substantial truth on a motion to dismiss, either as a defense or as part of the falsity element of the Plaintiff's case. *See Marder v. TEGNA Inc.*, No. 19-81283, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (dismissing statement that was substantially true); *Cape Publ'n, Inc. v. Reakes*, 840 So. 2d 277, 280 (Fla. 5th DCA 2003) (discussing substantial truth as an analysis as part of the falsity element of a defamation claim); *Smith*, 731 So. 2d at 707 ("[a]ccording to the U.S. Supreme Court and Florida case law, falsity only exists if the publication is substantially and materially false, not just if it is technically false").

statement for the allegedly false statement and determine if the allegedly true statement would have a "different effect" upon the reader.

Minor or technical inaccuracies in an allegedly false and defamatory statement are not a sufficient basis to defeat a claim of substantial truth unless those inaccuracies alter the "gist" or "sting" of the statement. *Masson v. New Yorker Magazine*, 501 U.S. 496, 516 (1991); *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706-07 (Fla. 3d DCA 1999). The policy behind this defense is that:

> [n]ot every error or inaccuracy should be actionable. The error should be a significant variation from the truth to give rise to liability. In order to avoid a "chilling" effect on the exercise of First Amendment rights, the media must be allowed "breathing space."

*Clark v. Clark*, No. 93-47-CA, 21 Media L. Rep. 1650, 1653 (Fla. 4th Cir. Ct. 1993).

In this case, the allegedly false and defamatory statement is substantially true and not actionable. The full statement upon which Counts I and II are predicated reads:

> Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party. A representative for the company said, "This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let The Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible."

(Doc. 36 ¶¶ 9, 90, Ex. 2); (Doc. 32 at Ex. C). The "gist" or "sting" of that statement is that Plaintiff pleaded guilty to voter registration fraud. That is, in fact, the charge to which Plaintiff pleaded guilty.

Plaintiff claims that the statement is inaccurate because it states the fraud was related to his work for the California Republican Party when the truth, he claims, is that he committed the fraud separate from his work. (Doc. 36 ¶¶ 2, 31-32, 92, 119, 131). This minor, technical inaccuracy is irrelevant under the First Amendment. Certainly, it is not defamatory to associate Plaintiff with the Republican Party generally, nor could he premise his claims on such an

17

association because identifying an individual as connected with a particular political party, even if false, is not defamatory as a matter of law. Robert D. Sack, *Sack on Defamation*, § 2:4.1, 5th ed. (2018) ("to refer to a Republican wrongly as a Democrat (or vice versa)…is unlikely to cause material injury to reputation. Although it is doubtful that the person about whom the statement is made will be pleased by the falsehood, that does not make it defamatory."). Instead, the effect on the mind of a reader of the challenged statement, and Plaintiff's denial immediately following the statement, is that Plaintiff pleaded guilty to voter registration fraud. Excluding the words "related to his work for the California Republican Party" does not produce a different effect than that produced by his own guilty plea. *See e.g., Nichols v. Moore*, 477 F.3d 396, 398, 401 (6th Cir. 2007) (dismissing defamation claim based on statement that plaintiff was "arrested in connection" with the Oklahoma City bombing, when he was arrested for an unrelated explosives offense because the distinction was not significant enough to make the misstatement actionable); *Lawrence v. Altice USA*, No. 20-393, 2021 WL 58317, at *2-3  (2d Cir. Jan. 7, 2021) (statement indicating plaintiff was currently facing stalking charges when he had been arrested for breaching the peace was substantially true, as gist was consistent with plaintiff's behavior and use of the term would not have affected the average reader's perceptions of plaintiff); *Bustos v. A & E Television Networks*, 646 F.3d 762, 762, 767 (10th Cir. 2011) (distinction between statement that plaintiff was a "member" of the Aryan Brotherhood as opposed to "conspired with" the Brotherhood was immaterial because "while it may not be *precisely* true, it is *substantially* true") (emphasis in original). The gist or sting remains the same: Plaintiff pleaded guilty to voter fraud. Thus, even if the challenged statement is not perfectly accurate, Plaintiff's defamation claim fails because the statement is substantially true.

**B. *The September 4 Article is not defamatory as a matter of law.***

Plaintiff argues that even if the statements are substantially true, they create a defamatory implication. However, the challenged statements, and any alleged implication that arises therefrom, are not defamatory as a matter of law. *See Rubin v. U.S. News & World Rep., Inc.*, 271 F. 3d 1305, 1306 (11th Cir. 2001) ("where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action") (internal quotations omitted); *Parekh v. CBS Corp., et al.*, 820 F. App'x 827, 833 (11th Cir. 2020) (affirming this Court's dismissal of defamation claims with prejudice where statements were not capable of defamatory meaning). A statement is defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Thomas*, 699 So. 2d at 803.

It is well-settled in Florida that a court must evaluate an allegedly defamatory publication not by "extremes, but as the common mind would naturally understand it." *McCormick,* 139 So. 2d at 200; *Cooper v. Miami Herald Publ'g Co.*, 31 So. 2d 382, 384 (Fla. 1947). In other words, "the statement should be considered in its natural sense without a forced or strained construction." *Byrd*, 433 So. 2d at 595; *see also Smith*, 731 So. 2d at 704. "There is no way to determine the 'gist' or 'sting' of the publication in the mind of the average [reader] without examining the statement in context." *Smith*, 731 So. 2d at 706. Accordingly, courts are not to take a scalpel to allegedly defamatory statements. Each publication alleged to be defamatory must be viewed in its totality; that is, the Court must consider all the words and pictures used and not just isolated words or phrases. *Id.* 704, 706 (citations omitted); *see also McCormick*, 139 So. 2d at 200; *Cooper*, 31 So. 2d at 384; *Byrd*, 433 So. 2d at 595.

As the *Byrd* Court explained:

> When words and pictures are presented together, each is an important element of what, *in toto,* constitutes the publication. Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines.

*Byrd*, 433 So. 2d at 595 (citations omitted). Indeed, the court must consider the context in which the statements were published, the author's use of cautionary terms, and all of the circumstances surrounding the publication, including the medium of expression and its audience.

Plaintiff claims the September 4 Article portrayed him as having "committed fraud with his past work," was "likely doing it again," and "is willing to resort to fraud in his political work." (Doc. 36 ¶¶ 56, 105). The Article, as a matter of law, does not.

The September 4 Article largely concerned West's unorthodox bid for presidency in light of his mental health status. (Doc. 36 at Ex. 2); (Doc. 32 at Ex. C). It describes West's efforts to appear on the ballots in several states and briefly discusses the various political figures, including Plaintiff, who are assisting with West's bid for presidency. *Id.* The Article dedicates a mere three sentences to Plaintiff. (Doc. 32 at Ex. C, p. 2). Though the September 4 Article truthfully points out that Plaintiff pleaded guilty to a misdemeanor voter registration fraud charge, it also contains Plaintiff's own denials of any relation between the plea and his past, present, or future political work. *Id.* Indeed, immediately following the statement regarding Plaintiff's misdemeanor plea, the September 4 Article includes a statement from Plaintiff's representatives who indicate "[t]his years-old misdemeanor charge had nothing to do with any political campaign or voter, Let The Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible." *Id.* While the September 4 Article truthfully states the West campaign has been "dogged by allegations of improperly or fraudulently obtaining signatures" in Virginia, the article as a whole does not imply or state that Plaintiff or his firm were tied to these

allegations. *See Parekh*, 820 F. App'x at 833 (given quotes asserting plaintiff's denials, "an ordinary reader would not understand the [] challenged statement to have a defamatory meaning."). Thus, taken as a whole, the September 4 Article conveys no defamatory meaning.

To be sure, the words used in conjunction with the specifically challenged statement belie any suggestion by Plaintiff that they accuse him of committing voter fraud with his work. Indeed, the complete statement reads: "Mark Jacoby, an executive at a company called Let The Voters Decide, is also helping the West campaign collect signatures in multiple states. Jacoby has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party. A representative for the company said, 'This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let The Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible.'" *Id.* Reasonably understood in its natural sense, as the common mind would understand this passage, the statement simply does not suggest that Plaintiff's plea was related to his past work, that he is currently committing fraud on the West campaign, or that he is willing to commit fraud in the scope of his work. The September 4 Article is not defamatory of Plaintiff as a matter of law, and therefore, the claims concerning the September 4 Article should be dismissed. Moreover, because any further amendment would be futile, these claims should be dismissed with prejudice.

### III. Count III Concerning the September 22 Article Does Not State A Cause of Action.

In Count III, Plaintiff attempts to allege that the September 22 Article creates false and defamatory implications about Plaintiff. Under Florida law, a defamation by implication claim must be based upon <u>truthful</u> statements. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). As the Florida Supreme Court explained, a defamation by implication claim occurs when

21

a defendant's factual statements are "literally true," but "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Id.* at 1106, 1108. Accordingly, for purposes of this Court's analysis, it must accept that the statements contained in the September 22 Article are "literally true."

Further, in a defamation by implication case, the implication and resulting defamatory meaning cannot rest in air. Rather, they must be deduced from the words used in the publication. *Kronk v. Am. Media, Inc.*, No. 2011-CA-011064-O, 43 Media L. Rep. 1548 (Fla. 9th Cir. Ct. Mar. 30, 2015) (implication and defamatory meaning "must be deduced from words used") (citing *Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 498 (Fla. 1953) (implication may only be used to point to meaning of words actually spoken)), *aff'd* 216 So. 3d 640 (Fla. 5th DCA 2016); *Cooper*, 31 So. 2d at 384 (implication is a deduction from the words used in the publication); *see also IBP, Inc. v. Hady Enter.,* 267 F. Supp. 2d 1148, 1155-58, 1164 (N.D. Fla. 2002), *aff'd*, 52 F. App'x 487 (11th Cir. 2002) (defamation claim failed because plaintiff failed to prove the "words on the labels themselves were injurious"); *Seymour v. The Lakeville Journal, Co., LLC*, No. 04-cv-4532, 2004 WL 2848537, *5 (S.D.N.Y. Dec. 9, 2004), *aff'd*, 150 F. App'x. 103 (2d Cir. 2005) (alleged defamatory meaning went beyond the meaning of the words used). Thus, any purported defamatory meaning must flow from the challenged statements, and any strained interpretation of the meaning of the actual statements contained in the publication must be rejected. *Seymour*, 2004 WL 2848537, at *5.

Plaintiff alleges the literally true statements falsely implied that his misdemeanor plea was related to his political work, including his work for the West campaign, and misstated the basis for Plaintiff's objection to Defendants' reporting. (Doc. 36 ¶¶ 13-15, 21, 64, 141-145). The

implication concerning the connection between the plea and his work is substantially true, and in any event belied by the words used in the September 22 Article.

The September 22 Article largely concerned Nathan Sproul, a Republican operative with a long history of controversial work. (Doc. 36 at Ex. 4); (Doc. 32 at Ex. D). The article is devoid of any reference or inference to Plaintiff being connected to fraud allegations surrounding the West campaign. Importantly, as stated above, a defamation by implication claim is based upon <u>true</u> statements. *Rapp*, 997 So. 2d at 1106. Therefore, as Plaintiff must acknowledge, he was arrested and charged with four felonies related to voter registration fraud in 2008 and pleaded guilty to a lesser misdemeanor voter registration fraud charge. (Doc. 36 at Ex. 4); (Doc. 32 at Ex. D). Likewise, it is true that he caught the attention of authorities that election cycle because of his work on behalf of the California Republican Party. *Id*.

Any implication that there was a connection between Plaintiff's political work, law enforcement's investigation and prosecution, and Plaintiff's subsequent plea is substantially true. For example, in *Rasmussen v. Collier County Publ'g Co.*, the plaintiff sued over a news report that stated he pleaded to charges related to a public corruption case. 946 So. 2d at 567. In fact, the plaintiff had been charged in two cases—a public corruption case and a stock fraud case—and had pleaded guilty <u>only</u> in the stock fraud case. *Id.* at 569. In the public corruption case, the charges were dismissed in exchange for his truthful testimony. *Id.* The court affirmed the trial court's finding that the publications were substantially truthful, notwithstanding the fact that the plaintiff did not plea to charges in the public corruption case, because the two cases were related. *Id.* at 570. Similarly, in this case, although Plaintiff's ultimate plea may not have been for his political work, law enforcement's investigation and prosecution certainly was—per the

Defendants' truthful reporting—precipitated by complaints about his political work. Any implication that the two are related is, therefore, substantially true.

Moreover, the article is rife with Plaintiff's own denials negating the purported implications alleged. For example, the September 22 Article reports "[r]epresentatives for [Plaintiff] have repeatedly insisted his misdemeanor plea is not relevant to his political work." . (Doc. 36 at Ex. 4); (Doc. 32 at Ex. D). The September 22 Article includes a statement from Plaintiff's representatives, who indicate his firm "did not perform work for the West campaign in New Jersey or Wyoming, nor did it work on the electors effort in Virginia," where allegations about improperly gathered signatures surfaced. *Id.* It further explains "none of the allegations of fraud surrounding the West campaign have been directly tied to [Plaintiff] or his firm." *Id.* To be sure, Plaintiff's own statements effectively negate any allegedly false and defamatory implication. *See Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 148-49 (D.D.C. 2017) (noting although article jumps backwards and forwards in time, it "specifically includes facts that negate the implications that [plaintiff] conjures up."); *see also Parekh*, 820 F. App'x at 833 (where plaintiff's denials were included in report, "an ordinary reader would not understand the [] challenged statement to have a defamatory meaning.").

Finally, Plaintiff claims that the statement, "[r]epresentatives for [Plaintiff] have repeatedly insisted his misdemeanor plea is not relevant to his political work" misstates the basis of Plaintiff's objection to the reporting. Plaintiff contends that the statement in effect concedes the factual basis of Plaintiff's claim—that the plea was for his work on the 2008 campaign—and implies that Plaintiff merely objected to whether the plea was "relevant" to his work today.[12]

---

[12] It appears Plaintiff complains this implication arises from the use of the words "not relevant to his political work" in place of "not related to" his political work. But "relevant" and "related to" each convey that Plaintiff insists the guilty plea is not connected to his political work. Courts do not entangle themselves in matters of editorial

*(footnote continued on next page)*

Contrary to Plaintiff's contention, the denial was not limited to his work today. And, as noted above, the article contains several specific denials related to Plaintiff's work on the West campaign. Put simply, Plaintiff's strained interpretation goes too far. *IBP*, 267 F. Supp. at 1148. His claims concerning the September 22 Article should be dismissed, and because any further amendment would be futile, these claims should be dismissed with prejudice.

## Conclusion

Plaintiff's Amended Complaint should be dismissed with prejudice. He did not adequately plead the requisite intent of actual malice, and any amendment to do so would be futile. Further, while Plaintiff may take issue with his past misdemeanor adjudication included in the September 4 Article, the challenged statement is substantially true, and the article is incapable of defamatory meaning. Plaintiff's defamation by implication claim concerning the September 4 Article also fails because it is premised upon allegedly false statements and thus fails to plead the requisite elements of defamation by implication. Finally, Plaintiff's defamation by implication claim as to the September 22 Article is baseless and goes beyond any reasonable interpretation of the article, contrary to established law. Plaintiff has failed to state any cause of action against the Defendants as a matter of law. Thus, Defendants respectfully request this Court dismiss Plaintiff's Amended Complaint with prejudice.

Dated: January 19, 2021

Respectfully submitted,

*/s/ Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 514462

---

discretion, such as a publisher's choice between two synonyms. *Nix v. ESPN, Inc.*, No. 1:18-cv-22208, 2018 WL 8802885, at *6 (S.D. Fla. Aug. 30, 2018) (decision to omit words "natural" and "synthetic" was an editorial decision that the court could not disturb because "courts afford news media defendants wide editorial discretion."); *Turner*, 970 F.3d at 1270 (deferring to media defendants' editorial discretion). As such, the choice between these two words cannot form the basis of Plaintiff's claim.

Giselle M. Girones
Florida Bar No. 124373
Minch Minchin
Florida Bar No. 1015950
Shullman Fugate PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL  33311
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
ggirones@shullmanfugate.com
mminchin@shullmanfugate.com
*Attorneys for Defendants Cable News Network,*
*Inc. and Sara Murray*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 19, 2021, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system.

*/s/ Deanna K. Shullman*
Deanna K. Shullman