**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARK JACOBY,**

        **Plaintiff,**

v.                                                                           Case No: 6:20-cv-1871-PGB-GJK

**CABLE NEWS NETWORK, INC.**
**and SARA MURRAY,**

        **Defendants.**
_____/

# ORDER

This cause comes before the Court on Defendants' Motion to Dismiss (Doc. 39 (the "**Motion**")), filed on January 19, 2021. On February 9, 2021, Plaintiff responded in opposition. (Doc. 42). Upon consideration, the Motion is due to be granted.

## I.   BACKGROUND[1]

Plaintiff Mark Jacoby is the owner of Let the Voters Decide, the "largest network of professional petition circulators in the country." (Doc. 36, ¶ 47). Let the Voters Decide was contracted to collect signatures on behalf of the Kanye West presidential campaign. (*Id.* ¶ 2).

---

[1]   This account of the facts comes from the Amended Complaint. (Doc. 36). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

In 2008, Plaintiff "was the subject of a politically-motivated public arrest in California . . . on charges that were ultimately reduced to a misdemeanor." (*Id.*). Plaintiff pleaded guilty to a misdemeanor charge "related to the location on his personal voter registration." (*Id.* ¶ 24(A)). At the time, Plaintiff owned and operated a business called Young Political Majors ("**YPM**"). (*Id.* ¶ 25). YPM provided signature-collection services and voter registration services to "a wide variety of clients with differing political views and affiliations." (*Id.* ¶ 26). Plaintiff was charged with four felonies for registering to vote in 2006 and 2007 at the address of his childhood home in Los Angeles, California, where he no longer resided. (*Id.* ¶ 29). Ultimately, Plaintiff pleaded guilty to a misdemeanor charge while the remaining felonies were dropped. (*Id.*¶¶ 31–32). Plaintiff began work for the California Republican Party in 2008. (*Id.* ¶ 36).

On July 4, 2020, rapper Kanye West announced that he was running for president. (*Id.* ¶ 41). In order to collect the required number of signatures to gain access to general election ballots, the West campaign hired Plaintiff and Let the Voters Decide to collect signatures in several states, including Florida. (*Id.* ¶ 42–43).

On September 4, 2020, Defendant Sara Murray, a CNN political correspondent, wrote and published an article (the "**First Article**") on Cable News Network ("**CNN**") about the Kanye West presidential campaign. (*Id.* ¶ 2; Doc. 36-2). The relevant part of the First Article states:

2

> [Plaintiff] has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party. A representative for the company said, "This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let the Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible."

(Doc. 36-2, p. 4).

After Plaintiff contacted CNN stating that the First Article was incorrect and requesting that Murray "correct her article," CNN published a second article on September 22 (the "**Second Article**"). (Doc. 36, ¶ 10; Doc. 36-4). The relevant part of the Second Article states:

> A California firm called Let the Voters Decide also worked on ballot access issues for the West campaign in multiple states. The firm's founder, [Plaintiff], has also faced past allegations of fraud.
>
> Back in 2008, [Plaintiff] was arrested and charged with four felonies related to voter registration fraud. He ended up pleading guilty to a lesser misdemeanor voter registration fraud charge.
>
> [Plaintiff] caught the attention of authorities that election cycle because of the signature gathering work his then-company, Young Political Majors, was doing. The company's work registering voters on behalf of the California Republican Party sparked a series of complaints. Voters said workers for [Plaintiff's] firm had tricked them into registering as Republicans by telling them they were actually signing petitions for harsher penalties for child molesters, according to press reports at the time.

> Representatives for [Plaintiff] have repeatedly insisted his misdemeanor plea is not relevant to his political work.[2]

(Doc. 36-4, p. 6). The Second Article also details allegations of fraud related to the Kanye West presidential campaign that are not related to Plaintiff or his company. (Doc. 36, ¶ 12).

Plaintiff alleges that Defendants' statements are "false and defamatory." (*Id.* ¶¶ 17, 90, 91, 92, 102, 103, 104). Plaintiff also alleges that the *same* statements are true or substantially true. (*Id.* ¶ 114).

Consequently, Plaintiff filed a two-Count Complaint alleging Defamation (Count I), and Defamation by Implication (Count II). (Doc. 1). Defendants filed their first Motion to Dismiss (Doc. 31), to which Plaintiff responded by filing an Amended Complaint. (Doc. 36). Plaintiff's Amended Complaint alleges three Counts: Defamation—First Article (Count I); Defamation by Implication—First Article (Count II); and Defamation by Implication—Second Article (Count III). (*Id.*). Defendants now move to dismiss the Amended Complaint, and the matter is ripe for review.

---

[2] Curiously enough, Plaintiff alleges that the statement "Representatives for [Plaintiff] have repeatedly insisted his misdemeanor plea is not relevant to his political work" is false. (Doc. 36, ¶ 14). Plaintiff states that his representatives "pointed out to CNN that [Plaintiff's] misdemeanor plea related only to his using the wrong California address for his own personal voter registration in 2006 and 2007, and was not at all for conduct relating to the California Republican Party drive in 2008 – or any other professional political work." (*Id.* ¶ 15). Plaintiff seems to allege that Defendants' use of the words "not relevant to," instead of his choice of words "had nothing to do with" create a defamatory meaning. (*Id.* ¶ 100). The Court does not see how Plaintiff's choice of words differs in any way to the meaning of Defendants' published statement.

4

## II.     LEGAL STANDARD

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. In order to survive a Rule 12(b)(6) motion, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1). Moreover, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although mere legal conclusions or a recitation of the claim's elements will not pass muster, a sufficient complaint does not require detailed factual allegations. *See Twombly*, 550 U.S. at 555. Indeed, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and resolve any doubts regarding the complaint's sufficiency in the plaintiff's favor. *See, e.g.*, *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 67.

## III.  DISCUSSION

Under Florida law, the elements of a defamation claim are: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). "In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (internal quotations omitted).

### A.  Count I: Defamation—First Article

Under Florida law, defamation is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Wolfson v. Kirk*, 273 So.2d 774, 776 (Fla. 4th DCA 1973). Defendants argue that Plaintiff does not state a cause of action for defamation because the First Article is substantially true. (Doc. 39, pp. 16–18); *see Marder v. Tegna Inc.*, No. 19-81283-CIV, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (dismissing

6

statements that were substantially true). Plaintiff argues that the statements are not substantially true and are defamatory as a matter of law. (Doc. 42, pp. 16–20).

As explained below, Plaintiff's Amended Complaint is due to be dismissed for failure to allege actual malice. As such, the Court does not need to discuss the adequacy of the remaining elements of a defamation claim.

### 1. *Plaintiff Jacoby is a Limited Public Figure*

Defendants first argue that Plaintiff is a public figure and must satisfy the actual malice standard associated with his status as such. Plaintiff maintains that he is not a public figure and that the Court "must accept the plaintiff's allegations that he is not a public figure." (Doc. 42). This is incorrect. Public figure status "is a question of law to be determined by the court." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So.2d 841, 845 (Fla. 4th DCA 2002); *see also Turner*, 879 F.3d at 1271 (finding plaintiff to be a public figure and affirming dismissal).

Because of the expressive freedom guaranteed by the First Amendment, a defendant may not be held liable for defaming a public figure about a matter of public concern unless he is shown to have "acted with actual malice." *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1493 (11th Cir. 1988); *see generally N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270–83 (1964). There is no dispute that matters concerning a Presidential election are matters of public interest; the only question is whether Plaintiff is a "public figure."

An individual may qualify as a public figure either generally—that is one with such fame and notoriety that he will be a public figure in any case—or for only

7

"limited" purposes, where the individual has thrust himself into a particular public controversy and thus must prove actual malice in regard to certain limited issues. *Turner*, 879 F.3d at 1272. A two-part test is used to determine whether someone is a limited public figure: "First [we] must determine whether the individual played a central role in the controversy. Second, [we] must determine whether the alleged defamation was germane to the individual's role in the controversy." *Id.* at 1273 (citations omitted). Two fundamental criteria help draw the line between public and private figures: (1) "public figures usually have greater access to the media which gives them a more realistic opportunity to counteract false statements than private individuals normally enjoy"; and, more importantly, (2) public figures typically "voluntarily expose themselves to increased risk of injury from defamatory falsehoods." *Silvester*, 839 F.2d at 1494 (internal quotation marks omitted). Moreover, "even if [a plaintiff] never voluntarily [seeks] public attention, federal courts have long made clear that one may occasionally become a public figure even if one doesn't choose to be." *Berisha v. Lawson*, 973 F.3d 1304, 1311 (11th Cir. 2020); *see also Turner*, 879 F.3d at 1273 ("It may be possible for someone to become a public figure through no purposeful action of their own."). The policy goals "served by [the public figure standard] would often be frustrated if the subject of publication could choose whether or not he would be a public figure. Comment upon people and activities of legitimate public concern often illuminates

8

that which yearns for shadow." *Rosanova v. Playboy Enters. Inc.*, 580 F.2d 859, 861 (5th Cir. 1978).[3]

Plaintiff incorrectly argues that he is not a public figure because he is not like other campaign contractors who "make a living by placing themselves in the limelight, gaining celebrity by the thrust and parry of their rhetoric and the popularity or infamy of their partisan brand." (Doc. 42, p. 6). Plaintiff attempts to argue that, because he "earns his living by being quietly effective behind the scenes," he cannot be considered a public figure. (*Id.*). Additionally, Plaintiff states that he is "relatively unknown outside of his industry," and that he has not "interjected himself into the public debate regarding Kanye West or the West campaign." (*Id.* ¶ 93).

In reality, Plaintiff concedes that his company Let The Voters Decide "is the largest network of professional petition circulators in the country." (Doc. 36, ¶ 47). He also alleges that "he was the subject of a politically-motivated *public* arrest in California 12 years ago on charges that were ultimately reduced to a misdemeanor." (*Id.*) (emphasis added). Additionally, Plaintiff's work on behalf of politicians *does* thrust him into the spotlight, regardless of his desire to remain behind the scenes or, one more argue, "in the shadows." *Cf Rosanova*, 580 F.2d at 861; *see also Friedgood v. Peters Publ'g Co.*, 521 So.2d 236, 239 (Fla. 4th DCA 1988) ("[I]t may be possible for someone to become a public figure through no purposeful action of

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

9

their own."). Plaintiff may not voluntarily enter the increasingly public realm of politics while simultaneously expecting to be insulated from public comment relating to his activities within that realm. Therefore, the Court finds that Plaintiff is a limited public figure.

### 2. *Plaintiff Fails to Plead Actual Malice*

Because Plaintiff is a public figure, he must allege that Defendants acted with "actual malice" to maintain a defamation action. *Turner* 879 F.3d at 1273. The Eleventh Circuit has previously held that the *Twombly/Iqbal* "plausibility pleading standard applies to the actual malice standard in defamation proceedings." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). That is, the Amended Complaint must allege sufficient facts to give rise to a reasonable inference that Defendants made the alleged false statements with knowledge that they were false or with reckless disregard for whether they were false or not. *Turner*, 879 F.3d at 1273. "The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant." *Michael*, 816 F.3d at 703. "Rather, we ask whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.* (citing *Sullivan*, 376 U.S. at 280).

Actual malice "requires more than a departure from reasonable journalistic standards." *Levan v. Capital Cities/ABAC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999). "Thus, a failure to investigate, standing on its own, does not indicate the

10

presence of actual malice." *Michel*, 816 F.3d at 703 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)). "Rather there must be some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth." *Id.* (citations omitted).

Moreover, "where the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice." *Id.* (citations omitted).

> The reasoning behind the rule is simple. Where a publisher gives readers sufficient information to weigh for themselves the likelihood of an article's veracity, it reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher itself has. Moreover, discouraging the inclusion of such contrary sources for fear of fueling a defamation lawsuit would run counter to the constitutional goal of promoting the free and robust discussion of public events. Thus, reporting perspectives contrary to the publisher's own should be interpreted as helping to rebut, not establish, the presence of actual malice.

*Id.*

Plaintiff has not pleaded sufficient facts giving rise to a reasonable inference that Defendants published the statements with actual malice. Aside from the conclusory allegation that Defendants "published the defamatory statements with actual malice and common law malice," (Doc. 36, ¶ 95), Plaintiff merely alleges that Defendants "ignored the most reliable publicly available information regarding the topic on which they were writing: [Plaintiff's] prior misdemeanor plea." (*Id.*). Plaintiff alleges that Defendants "consciously disregarded the warnings and corrections provided by Plaintiff and Plaintiff's counsel prior to publishing the defamatory statement in the [September 4] Article." (*Id.*).

Additionally, Plaintiff alleges that "Defendants did not review the public records created during the course of the California legal proceeding at issue here . . . ." (*Id.* ¶ 96).

Most significantly, Plaintiff's conclusory statements and lackluster allegations are rebutted by the Articles themselves, which were included as exhibits to the Amended Complaint. (*See* Docs. 36-2, 36-4); *see also Griffen Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). The September 4 article stated that "A representative for [Plaintiff's] company said, 'This years-old misdemeanor charge had nothing to do with any political campaign or voter, Let The Voters Decide, voter registrations, elections or any other matter and any ongoing focus on it is misplaced and irresponsible.'" (Doc. 26-2). The September 22 article stated, "Representatives for [Plaintiff] have repeatedly insisted his misdemeanor plea is not relevant to his political work." (Doc. 36-4). Because these statements are contrary to the general conclusions reached in the articles, they undermine Plaintiff's claims of malice. *See Michel*, 816 F.3d at 703; *see also Turner*, 879 F.3d at 1274 (statements published in the Report at issue ran contrary to Plaintiff's allegations and made "any allegation of actual malice less plausible").

Additionally, besides the mere conclusory allegation that "Defendants either knew that the statement was false or recklessly disregarded the truth or falsity of the statement at the time it was made," (Doc. 26, ¶ 99), Plaintiff failed to plead

12

sufficient facts showing that Defendants "entertained serious doubts" as to the truth of the articles. As such, the Court finds that Plaintiff failed to plead actual malice and the Amended Complaint is due to be dismissed.

### B.     Counts II & III: Defamation by Implication Claims

The Florida Supreme Court has recognized the tort of defamation by implication. Under this theory, a defendant may be held responsible for a defamatory implication if the defendant: "[1] juxtaposes a series of facts so as to imply a defamatory connection between them, or [2] creates a defamatory implication by omitting facts." *Jews for Jesus*, 997 So. 2d at 1106 (internal citations and quotations omitted). Defamation by implication also "applies in circumstances where literally true statements are conveyed in such a way as to create a false impression." *Id.* at 1108. That said, "[a]ll of the protections of defamation law that are afforded to . . . private defendants are . . . extended to the tort of defamation by implication." *Id.*

#### 1.    *Actual Malice*

The Court is unaware of any case law explicitly holding that defamation by implication claims should be analyzed under the same actual malice/negligence framework as traditional defamation claims. That said, this Court finds that the policy goals served by a heightened burden for defamation claims against public figures are equally served by a heightened burden for defamation by implication claims against public figures. As a result, the Court believes that Plaintiff must allege that Defendant published the articles with knowledge or reckless disregard

13

for their defamatory implication. For the same reasons discussed above, Counts II and III fail to do so and are due to be dismissed. However, because the case law surrounding defamation by implication is less resolved than traditional defamation, the Court will explain alternative grounds for dismissing Counts II and III.

### 2. *Count II: First Article*

The Amended Complaint states: "*If* the statement that '[Plaintiff] has previously pleaded guilty to voter registration fraud related to his work for the California Republican Party' is true or substantially true, the First Article nevertheless creates the false and defamatory implication that [Plaintiff's] misdemeanor was related to the methods he and his business used to register voters or gather signatures in support of political initiatives." (Doc. 36, ¶ 114) (emphasis added). Notably, this is the same statement Plaintiff alleges is false in his previous Count I for defamation. The Court cannot accept as true Plaintiff's allegation in Count I that this statement is false, while also accepting as true Plaintiff's allegation in Count II that this same statement is true.[4] The Court

---

[4] Plaintiff argues that Defendants do not cite any case law holding that a defamation by implication claim *must* rest on true statements alone. (Doc. 42, p. 14). In turn, Plaintiff only cites to an unreported case that says that a defamation by implication claim, *under Washington law*, can "contain[] a mixture of true and false statements." *Tardiff v. The Washington State Patrol*, No. 10-2-42991-3, 2012 WL 2502856 (Wash. Super. May 14, 2012). Moreover, current Eleventh Circuit case law reflects that "Defamation by implication arises where 'the defendant juxtaposes a series of facts so as to imply a defamatory connection between them,' *even though the particular facts stated are true.*" *Parekh v. CBS Corp.*, 820 F. App'x. 827, 835 (11th Cir. 2020) (citing *Jews for Jesus*, 997 So. 2d at 1108) (emphasis added). Defamation by implication can also occur where the defendant "creates a defamatory implication by omitting facts [] imposing liability upon the defendant who has the details right but the 'gist' wrong." *Id.* Plaintiff does not allege that Defendant omitted facts so that the "gist"

14

recognizes that "A party may state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3).[5] However, this rule does not absolve a party of its obligation to allege *facts* rather than hypotheticals. Plaintiff merely alleges "*If* the statement . . . is true or substantially true." (Doc. 36, ¶ 114) (emphasis added). But this is logically indistinguishable from alleging "*If* the statement was published." Neither statement alleges a *fact* necessary to state a claim for defamation by implication, so neither statement satisfies the *Twombly/Iqbal* pleading standard. Therefore, Count II is due to be dismissed.

### 3. Count III: Second Article

Plaintiff alleges that the Second Article titled "Kanye West's campaign has hired GOP operative with history of controversial work" creates two defamatory implications. (Doc. 36, ¶¶ 139–172). Specifically, Plaintiff alleges that the "Second

---

of the article was wrong. He alleged in a conclusory manner that the article "omits crucial facts . . . such as the fact that [Plaintiff's] misdemeanor related to his own voter registration. . . ." (Doc. 36, ¶ 116). An accurate reading of this allegation is really stating that the published statement about Plaintiff's misdemeanor charge was false.

As stated above, the Court cannot reconcile Plaintiff's inconsistent allegations that the same statement is both false and true at the same time. The Court notes that eventually, "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice § 134.30, pp. 134–62 (3d ed. 2000)).

[5] "A court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted … by statements in the complaint itself . . ." *Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12 Civ. 1343, 2013 WL 1234836, at *8 (S.D. N.Y. Mar. 26, 2013) (citing *In re Livent, Inc. Noteholders Securities Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (collecting cases)). When the facts as plaintiff alleges are "so contradictory that doubt is cast upon their plausibility, the court may . . . dismiss the claim." *Accurate*, 2013 WL 1234836, at *8 (internal quotations omitted) (citing *Shabazz v. Pico*, 994 F. Supp. 460, 468–71 (S.D.N.Y. 1998)).

15

Article perpetuates the defamatory implication that [Plaintiff's] misdemeanor charge and plea was for the methods he and his business used to register voters in 2008." (*Id.* ¶ 141). Plaintiff alleges that the "Second Article further perpetuates the defamatory implication that [Plaintiff's] misdemeanor related to the methods he and his business used to register voters because it omits facts that would avoid the implication, such as the fact that [Plaintiff's] misdemeanor related to his own voter registration in prior years and not to any voter registration services performed on behalf of any client in later years" (*Id.* ¶ 142).

Plaintiff's theory that the Second Article omits relevant information that his misdemeanor plea "related to his own voter registration" and as such creates a defamatory implication is flawed because the Second Article does not actually make such an omission. The article explicitly states that "Representatives for [Plaintiff] have repeatedly insisted his misdemeanor plea is not relevant to his political work." (Doc. 36-4).[6] This additional context negates Plaintiff's conclusory allegation that Defendants omitted facts that gave rise to a defamatory implication. Therefore, Count III is due to be dismissed.

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

---

[6] Again, Plaintiff argues that Defendants misrepresented Plaintiff's objection to Defendants' reporting. (*See* Doc. 36, ¶ 144). Plaintiff alleges that Defendants misreported the objection to create the defamatory implication that Plaintiff conceded the factual basis of Defendants' false claim. The Court is entirely unsure what this means. Defendants reported that Plaintiff and his representatives insist that his misdemeanor charge is not related to his political work therefore negating Plaintiff's allegations of a defamatory implication.

1. Defendants' Motion to Dismiss (Doc. 39) is **GRANTED**;

2. Plaintiff's Amended Complaint (Doc. 36) is **DISMISSED WITHOUT PREJUDICE**; and

3. On or before May 20, 2021, Plaintiff may file a Second Amended Complaint consistent with the directives of this Order, if he believes he can do so in accordance with Rule 11. Failure to timely file will result in dismissal of **this action with prejudice.**[7]

**DONE AND ORDERED** in Orlando, Florida on May 6, 2021.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[7] Assuming the Plaintiff files an Amended Complaint, this will be the second time the Complaint has been amended. If any Count of the Amended Complaint is met with a successful motion to dismiss, such dismissal will be with prejudice. Eventually the theories of liability must be perfected to ensure adequate time to conduct discovery.